Wilder, J.
 

 The Estates and Protected Individuals Code (EPIC), MCL 700.1101
 
 et seq
 
 ., governs the distribution of an individual's property at death. Among other reasons, the Legislature enacted it "[t]o promote a speedy and efficient system for liquidating a decedent's estate and making distribution to the decedent's successors." MCL 700.1201. EPIC grants a decedent's surviving spouse certain rights. For example, the surviving spouse of a decedent who dies intestate-that is, without a will- may still take a share of the decedent's property. MCL 700.2202(1). In fact, even if the decedent dies testate-with a will-a surviving spouse may take a share different from that allocated by the will's plain terms. MCL 700.2202(2). However, not every spouse can rely on these rights. For example, a valid
 divorce or annulment severs such reliance. MCL 700.2801(1). Alternatively, a spouse living in a bigamous relationship at the time of the decedent's death is also excluded. MCL 700.2801(2)(d). Although EPIC anticipates a number of other circumstances,
 
 [1]
 
 only one is at issue in the instant case: whether the surviving spouse was "willfully absent" from the decedent for more than one year before his death and is therefore ineligible under MCL 700.2801(2)(e)(
 
 i
 
 ) to exercise her rights under EPIC.
 

 This case turns on the meaning of "willfully absent" as used in MCL 700.2801(2)(e)(
 
 i
 
 ). In the proceeding below, the Court of Appeals concluded that "willful absence for the purposes of the EPIC is a factual question that may concern more than physical proximity," and that a "trial court should determine whether a spouse is willfully absent ... by considering all the facts and circumstances of the case."
 
 In re Erwin Estate
 
 , unpublished per curiam opinion of the Court of Appeals, issued May 10, 2016 (Docket Nos. 323387 and 329264), pp. 2-3. We granted leave to consider two questions, both of first impression: (1) whether the term "willfully absent" is defined exclusively by physical separation, or whether it includes consideration of the emotional bonds and connections between spouses; and (2) whether MCL 700.2801(2)(e)(
 
 i
 
 ) requires proof that a spouse intends to abandon his or her marital rights. For the reasons now discussed, we affirm.
 

 I
 

 The decedent, James Erwin, Sr., had six children from a previous marriage when he married appellee Maggie Erwin in 1968. James and Maggie went on to have four children together, bringing James's total number of children to 10. Several years after their wedding, James and Maggie bought a house in Saginaw. However, although remaining in Saginaw, Maggie moved out and established a separate residence in 1976. She subsequently petitioned James for financial assistance, and James consented to a support order that provided
 assistance for Maggie and for their children. But the two continued to live apart. There is no indication that they ever lived under the same roof again.
 

 Decades later, in 2010, James and Maggie joined together as plaintiffs and sued James's employer to reinstate Maggie's health insurance coverage in accordance with his retiree medical benefits. The couple was represented by L. Fallasha Erwin, James's son from his first marriage. During the proceedings, it was stated that Maggie was in poor health and that if she were to die, the loss to James would be irreparable. James made it clear that Maggie was still his wife and that they had an ongoing relationship.
 

 On October 12, 2012, James died intestate. James and Maggie had never filed for divorce nor had they otherwise formally separated. In the eyes of the law, they very much remained married until the time of James's passing. As testament to this fact, Maggie was listed as James's surviving spouse on his death certificate.
 

 Following his death, Maggie and James's children proceeded to sort through his estate informally. Yet all was not well with the related but distinct families that
 James had fathered. Apparently dissatisfied with the communication and cooperation shown by Maggie and her four children, one of James's children from his first marriage, Beatrice King, represented by her attorney-brother, L. Fallasha Erwin, petitioned the probate court to open formal proceedings and to be appointed as the estate's personal representative. On June 12, 2013, eight months after James's death and with no other interested party objecting, the probate court granted Beatrice's petition.
 
 [2]
 

 The probate court proceedings were contentious from the outset, with allegations of deceit and calls for sanctions. Both sides of James's family were involved and filed motions, only one of which is relevant to the case as it currently comes before us. In 2014, Beatrice asked the probate court to determine whether Maggie was a surviving spouse in accordance with EPIC. Beatrice argued, in part, that Maggie was not a surviving spouse under MCL 700.2801(2)(e)(
 
 i
 
 ) because she was "willfully absent" from James in the years leading up to his death. If proved, because James died intestate, Maggie would not be an heir for the purposes of inheritance. She would not be entitled to a share of James's estate.
 

 On May 31, 2014, the probate court held a hearing on Beatrice's motion, and on July 17, 2014, it decided that motion in Maggie's favor in a written opinion,
 ruling that Maggie was James's surviving spouse. Beatrice appealed, and the Court of Appeals affirmed the probate court's ruling. We subsequently granted Beatrice's application for leave to appeal, limited to the two questions described earlier.
 

 II
 

 We review de novo questions of statutory interpretation.
 
 People v. Buehler
 
 ,
 
 477 Mich. 18
 
 , 23,
 
 727 N.W.2d 127
 
 (2007). However, any underlying findings of fact are reviewed only for clear error.
 

 People v. Knight
 
 ,
 
 473 Mich. 324
 
 , 338,
 
 701 N.W.2d 715
 
 (2005) ; see MCR 2.613(C).
 

 III
 

 A
 

 For the purposes of EPIC, a surviving spouse does not include
 

 [a]n individual who ... for 1 year or more before the death of the deceased person:
 

 (
 
 i
 
 ) Was willfully absent from the decedent spouse. [ MCL 700.2801(2)(e).]
 

 With this in mind, we turn to the first question: whether the term "willfully absent" is defined exclusively by physical separation, or whether it includes consideration of the emotional bonds and connections between spouses?
 

 1
 

 As an initial matter, we note that EPIC does not define the term "willfully absent." Because our goal is to glean legislative intent from the plain meaning of statutory language,
 
 Wickens v. Oakwood Healthcare Sys.
 
 ,
 
 465 Mich. 53
 
 , 60,
 
 631 N.W.2d 686
 
 (2001), the dictionary is our first point of reference to determine the term's significance,
 
 People v. Morey
 
 ,
 
 461 Mich. 325
 
 , 330,
 
 603 N.W.2d 250
 
 (1999). The common understanding and the traditional legal usage of a term also guide our interpretation.
 
 People v. Thompson
 
 ,
 
 477 Mich. 146
 
 , 151-152,
 
 730 N.W.2d 708
 
 (2007) ; see also MCL 8.3a ("All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").
 

 MCL 700.2801(2)(e)(
 
 i
 
 ) uses the term "absent" as an adjective to describe a person's conduct in relation to his or her spouse. In this context, "absent" could mean that someone is missing, not present, or, alternatively, that a person is exhibiting inattentiveness toward another.
 
 The American Heritage Dictionary
 
 (2d ed.);
 
 Merriam-Webster's Collegiate Dictionary
 
 (11th ed.).
 
 [3]
 
 The word "willful," whether or not used as a legal term of art, describes an act that is voluntary, deliberate and intentional.
 
 Random House Webster's
 
 (2d ed.);
 
 Black's Law Dictionary
 
 (8th ed.). But the intent to commit any act does not, by itself, render it "willful." Rather, a "willful" act is one that is taken with the intent to do something specific.
 
 Jennings v. Southwood
 
 ,
 
 446 Mich. 125
 
 , 140,
 
 521 N.W.2d 230
 
 (1994) ; cf.
 
 People v. Beaudin
 
 ,
 
 417 Mich. 570
 
 , 575,
 
 339 N.W.2d 461
 
 (1983) (explaining that a willful act is one committed with the specific intent to bring about the particular result the statute
 seeks to prohibit).
 
 [4]
 
 Taken together, these definitions indicate that the phrase "willfully absent," as used in
 MCL 700.2801(2)(e)(
 
 i
 
 ), requires that the surviving spouse act with the intent to be away from his or her spouse for a continuous period of one year immediately preceding the death.
 

 However, while the plain language of MCL 700.2801(2)(e)(
 
 i
 
 ) suggests that the term "absent" may refer to physical separation or a lack of emotional support in the form of inattentiveness, it does not tell us specifically whether the term refers exclusively to the physical or whether it includes an emotional element. As such, we turn to neighboring statutory provisions for additional context. See
 
 Robinson v. City of Lansing
 
 ,
 
 486 Mich. 1
 
 , 15,
 
 782 N.W.2d 171
 
 (2010) ("[I]t is ... well established that to discern the Legislature's intent, statutory provisions are
 
 not
 
 to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole.");
 
 Griffith v. State Farm Mut. Auto. Ins. Co.
 
 ,
 
 472 Mich. 521
 
 , 533,
 
 697 N.W.2d 895
 
 (2005) (noting that the meaning of statutory language, plain or otherwise, always depends on context). With regard to the neighboring provisions, in addition to excluding one who is "willfully absent," the definition of surviving spouse also excludes those
 

 who did any of the following for 1 year or more before the death of the deceased person:
 

 * * *
 

 (
 
 ii
 
 ) Deserted the decedent spouse.
 

 (
 
 iii
 
 ) Willfully neglected or refused to provide support for the decedent spouse if required to do so by law. [ MCL 700.2801(2)(e).]
 

 Taking MCL 700.2801(2)(e)(
 
 ii
 
 ) first, when deployed as a transitive verb, as here, the term "to desert" is commonly used as a synonym for abandon-to forsake or leave someone.
 
 The American Heritage Dictionary
 
 (2d ed.);
 
 Merriam-Webster's Collegiate Dictionary
 
 (11th ed.). This common meaning mirrors the traditional legal usage of the term "desertion" in the context of divorce. In that context, a husband or wife deserted his or her spouse when the husband or wife ceased cohabitation and physically departed without the intent to return.
 
 Fanner v. Fanner
 
 ,
 
 326 Mich. 466
 
 , 467,
 
 40 N.W.2d 225
 
 (1949) ; see also
 
 People v. Dunston
 
 ,
 
 173 Mich. 368
 
 , 373,
 
 138 N.W. 1047
 
 (1912) (noting that, for purposes of the crime of desertion or abandonment, the term "desertion" meant to separate physically without the intent to resume martial relations).
 
 [5]
 
 Therefore, although in theory an individual could desert a spouse emotionally, the verb's common connotation in conjunction with its traditional legal meaning tells us that MCL 700.2801(2)(e)(
 
 ii
 
 ) most likely uses the term "deserted"
 

 to describe a purely physical distance. Accordingly, an individual deserts his or her spouse within the meaning of MCL 700.2801(2)(e)(
 
 ii
 
 ) if he or she physically leaves the marital home with the intent never to return and the spouse dies more than a year later.
 

 MCL 700.2801(2)(e)(
 
 ii
 
 ) permits us to draw an important inference. If we interpret the word "absent" as used in MCL 700.2801(2)(e)(
 
 i
 
 ) to refer only to physical absence, there would be an almost complete overlap between MCL 700.2801(2)(e)(
 
 i
 
 ) and (
 
 ii
 
 ). That is, an individual who "deserts" his or her spouse in
 the year or more before the spouse's death will always have been "willfully absent."
 
 [6]
 
 This would render MCL 700.2801(2)(e)(
 
 i
 
 ) redundant and counsels against equating the term solely with physical absence.
 
 Wickens
 
 ,
 
 465 Mich. at 60
 
 ,
 
 631 N.W.2d 686
 
 .
 
 [7]
 

 Next, we examine MCL 700.2801(2)(e)(
 
 iii
 
 ). A natural reading of that subparagraph indicates that the phrase "to provide support for the decedent spouse if required to do so by law" modifies the verbs "refused" and "neglected." Therefore, an individual is not a surviving
 spouse within the meaning of MCL 700.2801(2)(e)(
 
 iii
 
 ) if he or she "[w]illfully neglected ... to provide support for the decedent spouse if required to do so by law," or "refused to provide support for the decedent spouse if required to do so by law."
 

 Generally, spousal support is mandated by law only in two situations. The first involves divorce. MCL 552.23. However, divorcees are not surviving spouses for the purposes of EPIC. MCL 700.2801(1). As a result, MCL 700.2801(2)(e)(
 
 iii
 
 ) cannot be referring to spousal support following a divorce. See
 
 State Farm Fire & Cas. Co. v. Old Republic Ins. Co.
 
 ,
 
 466 Mich. 142
 
 , 146,
 
 644 N.W.2d 715
 
 , 717 (2002) ("Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory."). That leaves an action for separate maintenance-the second situation in which spousal support can be mandated-which can be filed by an individual based on the same grounds as an action for divorce, MCL 552.7, but in circumstances in which a divorce is not pursued or cannot be obtained.
 

 As already stated, the word "willfully" refers to an intent to do something specific. "Neglected," on the other hand, means to fail to give the proper attention to something, or otherwise to leave it undone; "refused" simply means to decline to do something.
 
 The American Heritage Dictionary
 
 (2d ed.);
 
 Merriam-Webster's Collegiate Dictionary
 
 (11th ed.). Accordingly, for the purposes of MCL 700.2801(2)(e)(
 
 iii
 
 ), an individual is not a surviving spouse if he or she intentionally fails or flatly refuses to pay legally required separate maintenance for the year or more leading up to his or her spouse's death.
 

 When viewed side-by-side, it becomes clear that MCL 700.2801(2)(e)(
 
 ii
 
 ) and (
 
 iii
 
 ) are not connected by an individual's physical proximity in relation to his or
 her spouse, and we cannot therefore infer that MCL 700.2801(2)(e)(
 
 i
 
 ) refers solely to physical absence by its mere association with its neighboring provisions. Cf.
 
 People v. Jackson
 
 ,
 
 487 Mich. 783
 
 , 791,
 
 790 N.W.2d 340
 
 (2010) (denoting that neighboring statutory provisions should be read in harmony with one another). Yet, another connection does bond these otherwise disparate
 subsections. Both MCL 700.2801(2)(e)(
 
 ii
 
 ) and (
 
 iii
 
 ) describe acts on behalf of a surviving spouse that for all intents and purposes are inconsistent with the very existence of a legal marriage. This is either by a spouse refusing to provide required support or by simply abandoning the other without an intent to return. In other words, MCL 700.2801(2)(e)(
 
 ii
 
 ) and (
 
 iii
 
 ) involve intentional acts that bring about a situation of divorce in practice, even when the legal marriage has not been formally dissolved. MCL 700.2801(2)(e)(
 
 i
 
 ) should be interpreted with this context in mind. See
 
 Madugula v. Taub
 
 ,
 
 496 Mich. 685
 
 , 696,
 
 853 N.W.2d 75
 
 (2014) (explaining that statutory provisions must be interpreted in the context of the law as a whole).
 
 [8]
 

 A comprehensive review of the statutory scheme confirms that the term "willfully absent" should be interpreted consistently with this observation. See
 
 Jackson
 
 ,
 
 487 Mich. at 791
 
 ,
 
 790 N.W.2d 340
 
 . Not only is "[a]n individual who is divorced from the decedent or whose marriage to the decedent has been annulled ... not a surviving spouse" for purposes of EPIC, MCL 700.2801(1), but
 also "[a]n individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment of their marriage, which decree or judgment is not recognized as valid in [Michigan]" is not a surviving spouse," MCL 700.2801(2)(a). And this includes "[a]n individual who, following an invalid decree or judgment of divorce or annulment obtained by the decedent, participates in a marriage ceremony with a third individual." MCL 700.2801(2)(b). These provisions all describe a situation in which, in effect, a spouse has initiated conduct that results in the complete dissolution of his or her marriage, either in fact or in practice. In those circumstances, an individual, even if legally a surviving spouse, cannot avail himself or herself of all the statutory rights inherent with that title.
 

 Taking all this into consideration, it is clear that the term "willfully absent" cannot be defined exclusively by physical separation. Simply put, there must be something more than a mere physical distance. There are, after all, countless situations in which spouses choose to be physically separated but do not want to interrupt or even weaken their marital relationship. Some married couples are separated by occupation-for example, when a spouse intentionally takes a better job in a neighboring region so that he or she may provide more comfortably for their family-while others are separated by civic duty-like when a member of the armed forces is deployed overseas in service to this nation. But these circumstances alone reveal no desire to destroy or undermine the marriage, and a committed spouse should not forfeit his or her inheritance on the basis of the erroneous assumption that a physical distance prevented the continued pursuit of an otherwise loving and supportive relationship. If two married people decide to live apart but maintain an element of
 emotional support and contact, courts have no business second-guessing that life decision.
 

 As a result, when MCL 700.2801(2)(e)(
 
 i
 
 ) is read in this proper context, the following explication becomes
 clear: willful absence requires consideration of the totality of the circumstances. It presents a factual question for the trial court to answer: whether a spouse's complete absence brought about a practical end to the marriage.
 
 [9]
 
 The burden is on the party challenging a legal spouse's status to show that the spouse was in fact "willfully absent" for the year or more leading up to the decedent's death. See
 
 In re LaFreniere's Estate
 
 ,
 
 316 Mich. 285
 
 , 291,
 
 25 N.W.2d 252
 
 (1946) ("[W]here exceptions to an account are of an affirmative nature ... the burden of sustaining such exceptions rests on the contestant."). Although an intentional physical absence is necessary to a finding of willful absence, without additional indicia of a complete absence in terms of emotional support and contact, courts should conclude that the marriage endured and allow the remaining legal spouse to retain his or her "surviving spouse" status.
 
 [10]
 

 2
 

 The dissent contends that "absent" in this context refers only to physical absence. In doing so, it states
 that the "critical aspect" of absence is the lack of physical presence, because a dictionary defines "absent" as "not present" or "away."
 
 Post
 
 at 324-. Unfortunately, the sum total of the dissent's analysis on this point is a string citation to dictionaries that define absence in terms of physical presence. See
 
 post
 
 at 325 n. 13. We do not disagree that "absent" can be understood in physical terms. And we are not surprised to find that multiple dictionaries define absence in this way. The question here is not whether physical absence is a "critical aspect" of absence in general-we agree that it is in this case-but whether, in the context of MCL 700.2801(2)(e)(
 
 i
 
 ), absence relates solely to physical absence. This is where our disagreement lies.
 

 While the dissent apparently agrees that "absent" can be defined as either a lack of physical presence or emotional inattentiveness, see
 
 post
 
 at 325, it nonetheless argues that these definitions are mutually exclusive and that therefore it is improper to define "absent" to encompass both definitions, see
 
 post
 
 at ---- n. 26 ("[O]ne definition requires a person to be
 
 physically absent
 
 , i.e., "not present; not in company; away," while the other, as it pertains to human interaction, requires in its ordinary usage a person to be
 
 physically present ....
 
 "). We disagree with the dissent that in order to be "inattentive" one must also be "physically present." One who is physically absent can still be "attentive" by providing emotional support and communication; conversely, one who is physically absent can also be "inattentive" by withholding emotional support and communication.
 
 [11]
 
 Accordingly, we do not believe
 that
 physical distance and inattentiveness are "logically inconsistent,"
 
 post
 
 at ---- n. 26, because neither concept is necessarily dependent upon the other.
 
 [12]
 

 More fundamentally, the dissent contends that when interpreting a statute, the interpreter must choose the single most appropriate dictionary definition of a term, rather than relying on multiple definitions. See
 
 post
 
 at ----. The dissent also contends that "[b]y knitting together ... disparate definitions, the majority creates its own definition ... instead of choosing the contextually appropriate meaning."
 
 Post
 
 at 325. We disagree. When consulting a dictionary, this Court does not relinquish its duty to exercise its best interpretive judgment. In this way, the dictionary should be seen as a tool to facilitate those judgments, not conclusively
 resolve linguistic questions.
 
 [13]
 
 It is one thing to "knit together" disparate and incompatible definitions, as, for example, by concluding that a "horse" refers both to the familiar animal and also to a frame or structure on which something is mounted or supported. It is quite another to insist on a single definition when there are multiple choices with slight shades of different meaning, each of which is reasonably understood to apply to a term in a particular context. Unlike the dissent, we believe that "absent" is a term broad enough to reasonably encompass both cited definitions and that the overall context and manifest purpose of the statute under inquiry renders both definitions appropriately applicable. These two definitions are not in tension in any way, they are not logically incompatible in any manner, and each describes a subtly different understanding of "absent" that is both relevant and necessary to give full and complete meaning to the statute at issue here.
 

 "Absent" in the course of describing a human relationship, particularly that between husband and wife, might fairly describe aspects of
 
 both
 
 physical and emotional proximity. The dissent is entitled to
 yoke itself to a single definition that remains within the boundaries set forth by a single dictionary, but we prefer to rely on the dictionary as a tool for supplying
 the most reasonable definition of a term in its most relevant context. The Legislature is not confined to a single dictionary definition of a term when enacting a law and neither should this Court be so limited when interpreting that law. The dictionary is but one data point; it guides our analysis, but it does not by itself settle it. The primary obligation of this Court "is to ascertain and effectuate the intent of the Legislature" in light of the language of the statutory provision and the context in which it appears.
 
 Lash v. Traverse City
 
 ,
 
 479 Mich. 180
 
 , 187,
 
 735 N.W.2d 628
 
 (2007). We believe that we have reasonably interpreted the text at issue and that we have thus fulfilled this duty.
 

 For the reasons stated, we conclude that, in this context, "absent" is most reasonably defined as referring to complete physical and emotional absence from the deceased spouse. This definition is consistent with the statutory scheme as a whole, which contemplates that one only loses his or her status as a "surviving spouse" if he or she takes action that is akin to a complete repudiation of the marriage. Moreover, this interpretation gives independent meaning to the "desertion" and "willfully absent" provisions and avoids rendering either provision redundant.
 

 3
 

 In the proceeding below, the Court of Appeals came to a similar conclusion. It ruled that "willful absence for the purposes of the EPIC is a factual question that may concern more than physical proximity."
 
 Erwin
 
 , unpub. op. at 3. As with our analysis, the Court of Appeals observed that a dictionary alone could not resolve the question before it,
 
 id
 
 . at 3-4, and it also turned to MCL 700.2801(2)(e)(
 
 ii
 
 ) and (
 
 iii
 
 ) to develop its view that mere physical separation was insufficient,
 
 id
 
 . at 4. Rather than sticking with a purely textual analysis, the Court of Appeals considered past precedent. The Court noted that an earlier case,
 
 In re Harris Estate
 
 ,
 
 151 Mich.App. 780
 
 ,
 
 391 N.W.2d 487
 
 (1986), had construed a similarly worded statute, see MCL 700.290, as amended by
 
 1980 PA 396
 
 ,
 
 [14]
 
 and that the Court of Appeals in
 
 Harris
 
 had determined that the term "willfully absent" "encompassed 'emotional as well as physical absence ....' "
 
 Erwin
 
 , unpub. op. at 4, quoting
 
 Harris
 
 ,
 
 151 Mich.App. at 785
 
 ,
 
 391 N.W.2d 487
 
 . As the
 
 Erwin
 
 Court observed, the
 
 Harris
 
 Court had reasoned that " '[p]hysical presence in the marital home is strong evidence that the party remains involved in the marriage to some degree' " and that "a non-surviving spouse must show 'actions indicating a conscious decision to permanently no longer be involved in the marriage.' "
 
 Erwin
 
 , unpub. op. at 4 (alteration in original), quoting
 
 Harris
 
 ,
 
 151 Mich.App. at 786
 
 ,
 
 391 N.W.2d 487
 
 . The
 
 Erwin
 
 Court then held that a "physical separation [was] only one piece of evidence that the trial court may consider and weigh when determining whether
 one spouse was willfully absent from another."
 
 Erwin
 
 , unpub. op. at 5.
 

 Yet in
 
 In re Peterson Estate
 
 ,
 
 315 Mich.App. 423
 
 ,
 
 889 N.W.2d 753
 
 (2016), which was decided just weeks after the instant case, the Court of Appeals came to a different determination. There, the Court of Appeals
 held that the phrase "willfully absent," as used in MCL 700.2801(2)(e)(
 
 i
 
 ), referred to physical absence only.
 
 Id
 
 . at 432,
 
 889 N.W.2d 753
 
 . Relying on a dictionary definition, the Court suggested that "[t]he word 'absent' ordinarily refers to being physically away."
 
 Id
 
 ., citing
 
 The Oxford English Dictionary
 
 (2d ed.). And although the Court of Appeals recognized that absence could figuratively refer to both physical proximity and emotional support, without clear direction from the statutory text, it limited the term to the former meaning.
 
 Peterson
 
 ,
 
 315 Mich.App. at 432
 
 ,
 
 889 N.W.2d 753
 
 . Interestingly, the Court of Appeals in
 
 Peterson
 
 also reviewed the earlier decision in
 
 Harris
 
 . But it determined that the
 
 Harris
 
 Court had concluded that "willfully absent" referred solely to physical absence.
 
 Id
 
 . at 431-432,
 
 889 N.W.2d 753
 
 . The Court of Appeals in
 
 Peterson
 
 therefore saw
 
 Harris
 
 as supporting its position that the term "willfully absent," as used in MCL 700.2801(2)(e)(
 
 i
 
 ), encompassed only physical absence.
 
 Id
 
 . at 432,
 
 889 N.W.2d 753
 
 . In that Court's view, an individual was not a surviving spouse for purposes of MCL 700.2801(2)(e)(
 
 i
 
 ), if he or she was intentionally physically absent from his or her spouse for the year or more leading up to the spouse's passing.
 
 Id
 
 . at 432-433,
 
 889 N.W.2d 753
 
 .
 

 We agree with the Court of Appeals' analysis in the case at bar and reiterate that an individual is not a surviving spouse for purposes of MCL 700.2801(2)(e)(
 
 i
 
 ) if he or she intended to be both physically and emotionally absent for the year or more leading up to the deceased spouse's passing.
 
 Peterson
 
 is overruled to the extent that it concluded otherwise.
 
 [15]
 

 B
 

 We now turn to the second question: whether MCL 700.2801(2)(e)(
 
 i
 
 ) requires proof that a spouse intended to abandon his or her marital rights?
 

 We note that the plain language of the statute evinces no express requirement that an individual intend to abandon his or her marital rights before being excluded as a surviving spouse pursuant to MCL 700.2801(2)(e)(
 
 i
 
 ). Indeed, the statute's text clearly includes a different requisite intent: that of being "willfully" absent. We are not at liberty to ignore this unambiguous legislative directive.
 
 People v. McIntire
 
 ,
 
 461 Mich. 147
 
 , 153,
 
 599 N.W.2d 102
 
 (1999). As a result, the only intent that a spouse must have is to be "absent." Therefore, a party seeking to establish that a spouse is not a surviving spouse pursuant to MCL 700.2801(2)(e)(
 
 i
 
 ) does not need to show that the spouse intended to dissolve the marriage, only that the surviving spouse intended to be absent from the decedent spouse.
 

 The notion that MCL 700.2801(2)(e)(
 
 i
 
 ) requires a showing that an individual intended to abandon his or her marital rights comes from
 
 In re Harris
 
 . The Court of Appeals read that intent into the statute in light of its recognition that forfeitures are disfavored in the eyes of the law.
 
 Harris
 
 ,
 
 151 Mich.App. at 786
 
 ,
 
 391 N.W.2d 487
 
 , citing
 
 Miller v. Pond
 
 ,
 
 214 Mich. 186
 
 ,
 
 183 N.W. 24
 
 (1921). When rendering its decision, the
 
 Peterson
 
 Court disagreed with the conclusion reached in
 
 Harris
 
 , stating that "[t]he Legislature did not include such a requirement, and we are not at liberty to read one into the statute."
 
 Peterson
 
 ,
 
 315 Mich.App. at 433
 
 ,
 
 889 N.W.2d 753
 
 . We agree with the
 conclusion reached by
 
 Peterson
 
 . MCL 700.2801(2)(e)(
 
 i
 
 ) does not require proof that a spouse intends to abandon his or her marital rights.
 
 [16]
 
 Courts should not resort to judicial construction when the words of the Legislature are clear and unambiguous.
 
 Turner v. Auto Club Ins. Ass'n
 
 ,
 
 448 Mich. 22
 
 , 27,
 
 528 N.W.2d 681
 
 (1995).
 

 IV
 

 In the present case, the following is not in dispute. James and Maggie were married in 1968. In 1973 they bought a martial home together in Saginaw as tenants by the entireties. Maggie left the marital home in 1975 and took residence at a separate address, but she remained only a few miles away, still in Saginaw. Shortly thereafter, she sought financial support and James agreed to pay. Neither party disagrees that Maggie was physically absent from the martial home in the years that followed, intentionally so, and neither party disputes that James and Maggie Erwin remained legally married until James's death. Maggie is even listed as the surviving spouse on James's death certificate, and she is the named beneficiary of his life insurance policy. Therefore, the question is whether, given the totality of the circumstances, Maggie intended to be physically and emotionally absent from James, resulting in a practical end to their marriage?
 

 Unfortunately for Beatrice, the record in this case is sparse. Before the probate court, Beatrice asserted that Maggie was not a surviving spouse and moved for a declaration of her status as a nonsurviving spouse pursuant to EPIC. But her claim rested solely on the allegation that Maggie and James did not cohabitate for over 36 years, and she provided nothing more in support of her claim than evidence of this fact. Beatrice never argued that Maggie and James had severed all emotional connections or that they did not in some way provide one another with emotional support. And other evidence in the record-specifically that in 2010 James filed a breach of contract action against his employer to ensure that the employer resumed providing medical coverage to Maggie as James's spouse-suggests that James and Maggie remained married up until the time of James's death. At a minimum, this lawsuit indicates that, not long before his death, James felt that losing Maggie would have been an irreparable loss and that in his eyes and hers, they were still husband and wife. As already stated, while physical separation is necessary for a finding that a spouse is not a surviving spouse for the purposes of
 EPIC, physical separation alone is insufficient. Because Beatrice only provided evidence of physical separation between Maggie and James and did not refute the evidence tending to show the enduring emotional connections between them, her claim necessarily fails.
 
 [17]
 

 On the meager record before it, the probate court understandably ruled that Maggie was the surviving
 spouse of James for purposes of EPIC. The probate court recognized that the couple had not resided together for many years but found that the couple had chosen a separated lifestyle rather than a complete end to their marriage. In the probate court's eyes, the couple's relationship was ongoing and included contact up until James's death. We find no clear error in this factual determination. The probate court could only rule on the evidence before it.
 

 The Court of Appeals correctly affirmed the probate court. It observed that Beatrice had argued solely that Maggie and James were physically separated for more than a year and that this evidence was insufficient as a matter of law to establish that Maggie was "willfully absent." We agree with the Court of Appeals' conclusion and affirm.
 

 V
 

 We hold that an individual is not a surviving spouse for the purposes of MCL 700.2801(2)(e)(
 
 i
 
 ) if he or she intended to be absent from his or her spouse for the year or more leading up to the spouse's death. Absence in this context presents a factual inquiry based on the totality of the circumstances, and courts should evaluate whether complete physical and emotional absence existed, resulting in an end to the marriage for practical purposes.
 
 [18]
 
 The burden is on the party challenging
 an individual's status as a surviving spouse to show that he or she was "willfully absent," physically and emotionally, from the decedent spouse. Because the Court of Appeals in the present case correctly concluded that Maggie was not "willfully absent" from James in the years leading up to his death, we affirm. We decline to address the remaining issues presented in the application for leave to appeal because we are not persuaded that they should be reviewed by this Court
 

 Stephen J. Markman
 

 Brian K. Zahra
 

 Elizabeth T. Clement (except to the extent the opinion addresses whether evidence of physical absence is needed to support a finding that a spouse was willfully absent)
 

 Clement, J. (concurring in part).
 

 I support the result reached by the majority-the Court of Appeals rightly affirmed
 the trial court's finding that Maggie was not "willfully absent" from James. I also agree with the majority that the term "willfully absent" is broad enough to encompass emotional absence. But I write separately because I do not support the majority's proposition that "intentional physical absence is necessary" to support a finding that a spouse is "willfully absent" under MCL 700.2801(2)(e)(
 
 i
 
 ).
 
 Ante
 
 at ----.
 

 This case squarely presents the question whether the term "willfully absent" in MCL 700.2801(2)(e)(
 
 i
 
 )"includes consideration of the emotional bonds and connections between spouses,"
 
 ante
 
 at ----, and so it is proper for the majority (and the dissent for that matter) to wrestle with that question. But this case does not present the question whether the term "willfully
 absent" requires physical absence; nor do the facts of this case allow that proposition to be tested since neither party disputes that Maggie was physically absent from James. See
 
 ante
 
 at ----;
 
 post
 
 at ----. In short, the majority's proposition in no way bears on the outcome of this case, and so I view the proposition as obiter dictum.
 

 To be fair, a physical-absence requirement is unlikely to cause mischief-I don't doubt that in a typical case, a finding that a spouse was "willfully absent" will be supported by, among other things, record evidence of physical absence. But I would prefer that the majority's proposition become enshrined in law only after we consider a case in which that proposition plays a deciding role.
 

 For instance, a surviving spouse also does not include "[a]n individual who is a party to a divorce or annulment proceeding with the decedent at the time of the decedent's death." MCL 700.2801(3)(b). Additionally, a surviving spouse does not include "[a]n individual who, following an invalid decree or judgment of divorce or annulment obtained by the decedent, participates in a marriage ceremony with a third individual." MCL 700.2801(2)(b). See generally MCL 700.2801 for more examples.
 

 The personal representative's duties include settling and distributing the decedent's estate in accordance with EPIC, "as expeditiously and efficiently as is consistent with the best interests of the estate." MCL 700.3703(1). In effect, the personal representative is in charge of the day-to-day probate proceedings and is answerable to the court. Although no interested party objected to Beatrice's appointment, allegations later surfaced that Maggie and her children had been misled to believe that Beatrice was not pursuing the position. L. Fallasha and Beatrice denied that charge.
 

 We agree with the dissent that there is no meaningful difference between the dictionary definitions cited in this opinion and those cited by the dissent. See
 
 post
 
 at 323 n. 11.
 

 The dissent would prefer to understand "willful" to mean "to make a decision on one's own, without regard to others,", or, as it later characterizes it, to make a "unilateral decision."
 
 Post
 
 at 327
 
 .
 
 The dissent argues that this is how the term is commonly understood in the "context of human interaction," because "[l]inguistically, it does not make much sense to think of a person's absence from their spouse under EPIC in terms of whether the absence was 'deliberate' or 'intentional.' "
 
 Post
 
 at 327. We find this reasoning unpersuasive. After all, although some "deliberate" decisions may not be "unilateral," all "unilateral" decisions are, by their very nature, "deliberate." Moreover, unlike the dissent, we have at least cited caselaw that supports our understanding of willful as an act that is taken with the intent to do something specific.
 

 The traditional use of desertion as a ground for divorce has disappeared since the Legislature enacted the no-fault divorce act,
 
 1971 PA 75
 
 , in 1971.
 
 Sparks v. Sparks
 
 ,
 
 440 Mich. 141
 
 , 156-157,
 
 485 N.W.2d 893
 
 (1992). Since that time, a divorce can be sought on the basis that there has been "a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." MCL 552.6(1). Nothing more is required.
 

 The difference between the two provisions would turn on whether there was an intent to leave and never return as in MCL 700.2801(2)(e)(
 
 ii
 
 ), or simply an intent to leave as in MCL 700.2801(2)(e)(
 
 i
 
 ). In practice then, if the subsections were both interpreted to involve physical separation only, a party would never need to demonstrate a spouse's intent never to return. It would be simpler just to argue that the spouse intended to leave.
 

 The dissent disagrees that MCL 700.2801(2)(e)(
 
 i
 
 ) would be rendered redundant if the term "absent" were interpreted to encompass only physical absence. See
 
 post
 
 at ----. Assuming the validity of the law cited by the dissent as it relates to a now-defunct component of domestic-relations law, see note 5 of this opinion, the fact remains that if absence under MCL 700.2801(2)(e)(
 
 i
 
 ) were limited to physical absence, for practical purposes, a party would never need to demonstrate a spouse's intent not to return. See note 6 of this opinion.
 

 The dissent accuses us of failing to apply any canon of statutory interpretation in coming to this conclusion.
 
 Post
 
 at 328- n. 37. It is true that we have not explicitly named the canons in our opinion, and we were unaware that such formulism was necessary to render a proper textualist decision. Yet a careful reading of our opinion and accompanying citations clearly illustrates that we have applied the established rules of interpretation. See, e.g.,
 
 Robinson
 
 ,
 
 486 Mich. at 15
 
 ,
 
 782 N.W.2d 171
 
 ;
 
 Griffith
 
 ,
 
 472 Mich. at 533
 
 ,
 
 697 N.W.2d 895
 
 ;
 
 Jackson
 
 ,
 
 487 Mich. at 791
 
 ,
 
 790 N.W.2d 340
 
 .
 

 Rather than an unworkable focus on how inattentive a spouse must be in order to be "absent" within the meaning of MCL 700.2801(2)(e)(
 
 i
 
 ), see
 
 post
 
 at 324 n. 17, instead, the trial court should ascertain whether that spouse has been
 
 completely
 
 absent from the other, both emotionally and physically.
 

 Forfeitures are not favored in law.
 
 Miller v. Pond
 
 ,
 
 214 Mich. 186
 
 , 190,
 
 183 N.W. 24
 
 (1921). This general rule supports our conclusion that neither physical nor emotional absence in isolation is sufficient for purposes of MCL 700.2801(2)(e)(
 
 i
 
 ). Rather, a complete absence is required, both physical
 
 and
 
 emotional.
 

 Despite the dissent's own proclamations to the contrary, there is nothing outlandish about stating that emotional support and communication can be absent from a personal relationship, nor with characterizing one who withholds such support as being emotionally absent from that relationship. The dissent's chosen dictionary definitions do not undermine this point. Cf.
 
 post
 
 at ---- (stating that dictionaries refer to absence in various ways, including, but not limited to, " '[not] attentive,' " " 'inattentive,' " and " 'paying no attention to' ") (citations omitted).
 

 The dissent cites a dictionary that defines the term "absent," in part, in relation to physical proximity. See
 
 post
 
 at ---- ("[H]eedless; inattentive to persons present or to subjects of conversation in company.") (quotation marks and citation omitted). However, "heedless" can be defined as "INCONSIDERATE" or "THOUGHTLESS,"
 
 Merriam-Webster's Collegiate Dictionary
 
 (11th ed.), the understandings of which are not inconsistent with a finding of physical presence. Contra
 
 post
 
 at 325 n. 26 ("[O]ne definition requires a person to be
 
 physically absent
 
 ... while the other, as it pertains to human interaction, requires a person to be
 
 physically present
 
 ...."). Moreover, other dictionaries define "absent" as merely meaning "inattentive," without regard to whether there is a physical presence. See
 
 Webster's Third New International Dictionary
 
 ("INATTENTIVE");
 
 The American Heritage Dictionary of the English Language
 
 (5th ed.) ("[e]xhibiting or feeling inattentiveness");
 
 The Random House Dictionary of The English Language
 
 (2d ed.) ("not attentive; preoccupied; absent-minded"). For this reason, we consider the dissent's insinuation that we are engaging in "definition-shopping" to be extravagant. See
 
 post
 
 at 326- n. 27 ("There are many ways that 'an uncritical approach to dictionaries can mislead judges.'... Not surprisingly, definition-shopping is high on the list.") (citation omitted).
 

 See
 
 Yates v. United States
 
 , 574 U.S. ----, ----,
 
 135 S.Ct. 1074
 
 , 1081,
 
 191 L Ed 2d 64
 
 (2015) (opinion by Ginsburg, J.) (explaining that dictionary definitions bear consideration in determining the meaning of a word but that they are not always dispositive);
 
 id
 
 . at ---,
 
 135 S.Ct. at 1092
 
 (Kagan, J., dissenting) (agreeing that dictionary definitions do not control if other textual markers suggest that a different definition is appropriate); see also
 
 Krohn v. Home-Owners Ins Co
 
 ,
 
 490 Mich. 145
 
 , 156,
 
 802 N.W.2d 281
 
 (2011) (stating that courts
 
 may
 
 consult a dictionary to give words their common and ordinary meaning not that they
 
 must
 
 consult a dictionary or that they must choose a single definition from among many).
 

 As the Court of Appeals noted in
 
 Harris
 
 , "[t]he Revised Probate Code provides that a surviving spouse may elect against the will of his deceased spouse ... and may claim certain allowances from the estate. However, MCL.§ 700.290... states that the rights provided by such statutes are forfeited if the surviving spouse 'did any of the following for 1 year or more previous to the death of the deceased spouse: (a) Was
 
 wilfully absent
 
 from the decedent spouse.' "
 
 Harris
 
 ,
 
 151 Mich.App. at 783
 
 ,
 
 391 N.W.2d 487
 
 , quoting MCL 700.290 (citations omitted; emphasis added). As can be seen, and as the Court of Appeals in
 
 Erwin
 
 noted, the language of the now-repealed MCL 700.290 is almost identical to the language of MCL 700.2801.
 
 Erwin
 
 , unpub. op. at 4.
 

 However, we agree with the Court of Appeals' conclusion in
 
 Peterson
 
 that the absence described in MCL 700.2801(2)(e)(
 
 i
 
 ) must be continuous for at least a year leading up to the spouse's death.
 
 Peterson
 
 ,
 
 315 Mich.App. at 432-433
 
 ,
 
 889 N.W.2d 753
 
 . We also agree that the statute does not require the surviving spouse to make a continuous effort to maintain the marital relationship.
 
 Id
 
 . at 434,
 
 889 N.W.2d 753
 
 . That is, the inquiry is into whether the surviving spouse did the "absenting," not whether the surviving spouse did enough to prevent the absence.
 

 The dissent insinuates that we agree with the
 
 Peterson
 
 Court on the one hand but disagree with it on the other. See
 
 post
 
 at 326 n. 28. This misconstrues our position, in which we illustrate that there is a difference between actions taken with the intent to abandon martial rights and actions taken that have the practical effect of ending a marriage regardless of the intent. In other words, 'willful,' as used in this provision, refers to an intent to be completely absent, which effectively results in a practical end of the marriage, regardless of whether the spouse specifically intended to end the marriage when he or she took such action.
 

 In earlier proceedings, Beatrice objected to the legitimacy of the evidence relating to the 2010 action against James's employer to reinstate healthcare coverage for Maggie as James's spouse. But we observe that the healthcare case was handled by Beatrice's brother and current attorney, L. Fallasha Erwin, who has freely admitted that he argued in the healthcare case that James and Maggie were still married.
 

 We agree with the dissent that the interpretation of a statute is a purely legal question and that statutory interpretation presents a question of law. See
 
 post
 
 at 322 n. 2. Having defined the statutory term "willfully absent" as meaning complete emotional and physical absence from the marriage, we believe it prudent and perhaps instructive to offer guidance to trial courts that in order to ascertain whether complete absence existed, an inquiry into the facts of the case may be required. Accord
 
 post
 
 at 329 n. 38 (stating that the dissent would direct the trial court to consider all the facts at its disposal). For this reason, we reject the dissent's accusation that we put the "cart before the horse."
 
 Post
 
 at 322 n. 2.