*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF HERMANN A. VON GREIFF.

---

CARLA J. VON GREIFF,

Petitioner-Appellee,

v

ANNE JONES-VON GREIFF,

Respondent-Appellant.

FOR PUBLICATION
April 23, 2020
9:10 a.m.

No. 347254
Marquette Probate Court
LC No. 18-034046-DE

---

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

GLEICHER, J.

Anne Jones-Von Greiff and Hermann Von Greiff were married for 15 years. During the marriage, Hermann was unfaithful to Anne. The parties argued, sometimes fiercely. On June 1, 2017, after Hermann repeatedly and angrily told Anne to "get out of my fucking house," Anne filed for divorce.

Over the course of the next year, the parties and their lawyers litigated and negotiated the dissolution of the Von Greiff marriage. Hermann stipulated that Anne could reside in the marital home, and he never returned. Hermann died shortly before the divorce judgment was signed—on June 17, 2018, slightly more than a year after the parties separated. Hermann's adult daughter, Carla J. Von Greiff, brought this action seeking to dispossess Anne of her right to inherit as Hermann's surviving spouse.

The probate court ruled that Anne did not qualify as Hermann's surviving spouse because she was "willfully absent" from him for more than a year before his death, citing MCL 700.2801(2)(e)(*i*). That statute is inapplicable to the period of time consumed by divorce proceedings. We reverse.

-1-

# I

Anne and Hermann Von Greiff had a rocky relationship. The couple actually divorced in 2000, but remarried in 2003. Husband and wife sometimes lived separately, as Hermann moved away for extended periods of time to accept various job opportunities. Hermann was often unfaithful. And Hermann suffered from bipolar disorder, making him volatile and difficult to live with. As Hermann grew older, his physical health also declined. In May 2017, Hermann decided to undergo an elective spinal fusion surgery. Anne disagreed that he should undertake the risks of the operation. The couple fought, and Hermann asked his daughter Carla to fly up from Florida to take him for the surgery. Anne described that Hermann said "nasty things" to her during this period, demanded that she leave for the "hundredth time" during a "fierce attack," and told her repeatedly and angrily to "get out of my fucking house." Anne questioned whether Hermann was certain about his decision, and he responded by again ordering Anne out of the home.

Anne did not immediately leave the home, but waited for Carla's arrival. Following Hermann's surgery, he moved to an assisted living facility. In his absence, Anne and Hermann agreed that only Anne would move back into the marital home. Divorce proceedings followed.

A Michigan spouse may seek a divorce without stating a specific cause. "[A] divorce can be sought on the basis that there has been 'a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.' MCL 552.6(1). Nothing more is required." *In re Estate of Erwin*, 503 Mich 1, 12 n 5; 921 NW2d 308 (2018). Anne Von Greiff filed for divorce on June 1, 2017. Although she did not need to, Anne alleged a cause for the breakup of her marital union: infidelity. During the divorce proceedings, Hermann admitted under oath that he had sexual relations with other women while married to Anne.

The divorce moved slowly. The parties eventually resolved all divorce-related issues but apparently could not agree regarding spousal support. The circuit court issued an opinion and order granting Anne spousal support on May 29, 2018, almost a year after the divorce action had been filed. The table was set for the prompt entry of the divorce judgment.

Unfortunately, the circuit court's spousal support opinion contained a significant error. The opinion inaccurately asserted that "Plaintiff admitted to infidelity during the marriage;" it should have stated "Defendant admitted to infidelity during the marriage." Anne filed a motion objecting to this aspect of the order and seeking its correction. But Hermann died before her motion could be heard, the error fixed, and the judgment signed. As of June 17, 2018, the date of Hermann's death, the parties had lived apart for little more than a year. In August 2018, the circuit court issued an order correcting its previous opinion and order to reflect that Hermann had been the unfaithful party.

After Hermann's death, Carla J. Von Greiff filed a petition in the probate court under MCL 700.2801(2)(e), seeking a declaration that Anne was not Hermann's surviving spouse. Section 2801(2)(e)(*i*) provides that a "surviving spouse" under the EPIC "does not include . . . [a]n individual who . . . [w]as willfully absent from the decedent spouse" for a year or more before the decedent spouse's death. Carla alleged that Anne had been "willfully absent" from Hermann for more than a year before his death.

The probate court conducted an evidentiary hearing on the petition. Anne and Carla testified extensively. The probate court found that Anne had intentionally absented herself from Hermann, physically and emotionally, for more than a year before Hermann died. Therefore, the probate court ruled, Anne did not qualify as Hermann's surviving spouse.

II

Anne now challenges the probate court's determination that she was "willfully absent" and therefore not qualified as a surviving spouse. Generally, we review for clear error a court's factual findings. *In re Estate of Erwin*, 503 Mich 1, 9; 921 NW2d 308 (2018). We review de novo a lower court's determination that a statute applies to the action before it. *Florence Cement Co v Vettraino*, 292 Mich App 461, 473; 807 NW2d 917 (2011).

The evidentiary hearing in this case was unnecessary and the probate court's findings irrelevant, because MCL 700.2801(2)(e) does not apply as a matter of law. Anne did not "willfully absent" herself from Hermann; she sought a divorce and, as many divorcing spouses do, elected to live separately while the matter made its way through the circuit court. Furthermore, Hermann formally *stipulated* to that living arrangement. Considering a combination of common sense, the common law, and a venerable canon of statutory construction: *expressio unius est exclusio alterius*, it is clear that the Legislature did not intend to disinherit a spouse whose divorce was in progress but not yet finalized when the other spouse dies.

III

We begin with a review of the common law. Just last term, in *In re Estate of Erwin*, our Supreme Court explored the meaning of MCL 700.2801(2)(e) in considerable detail. The subsections of this statute provide that a surviving spouse does not include:

(e) An individual who did any of the following for 1 year or more before the death of the deceased person:

(*i*) Was willfully absent from the decedent spouse.

(*ii*) Deserted the decedent spouse.

(*iii*) Willfully neglected or refused to provide support for the decedent spouse if required to do so by law. [MCL 700.2801(2)(e).]

Like *Erwin*, this case involves subsection (*i*): willful absence.

In arriving at the meaning of the phrase "willfully absent," the *Erwin* Court observed that the three grounds for disinheriting a spouse listed under (e) are inherently fault-based and rest on intentional spousal misconduct. "Desertion" and "willful neglect" describe deliberate, unilateral choices designed to destroy the objects of matrimony. The Supreme Court explained: "MCL 700.2801(2)(e)(*ii*) and (*iii*) [addressing desertion and willful neglect] involve intentional acts that bring about a situation of divorce in practice, even when the legal marriage has not been formally dissolved." *Erwin*, 503 Mich at 15. Willful absence is somewhat more difficult to parse; one of

-3-

the questions presented in *Erwin* was whether the phrase encompassed only physical separation, or "includes consideration of the emotional bonds and connections between spouses." *Id*. at 6.

The Supreme Court interpreted "willful absence" in accordance with its "context"—its placement alongside the terms "desertion" and "willful neglect." *Id*. at 15. "A comprehensive review of the statutory scheme confirms that the term 'willfully absent' should be interpreted consistently" with the meanings of desertion and willful neglect, and the rule that a divorced spouse is not a surviving spouse. *Id*. at 15-16. For the *Erwin* majority, context dictated that both physical *and* emotional separation are required under MCL 700.2801(2)(e)(*i*). "Absence in this context presents a factual inquiry based on the totality of the circumstances, and courts should evaluate whether complete physical and emotional absence existed, resulting in an end to the marriage for practical purposes." *Erwin*, 503 Mich at 27.

Thus, MCL 700.2801(e) generally stands for the proposition that when a spouse decides to *informally* dissolve a marriage by neglecting or deserting a partner or by withdrawing from that partner both physically and emotionally, that departing spouse loses the right to inherit from the spouse left behind.

These provisions encapsulate readily understood equitable principles. A spouse who contrives an *extralegal* remedy for a failed marriage by desertion, neglect, or abandonment should not be afforded the rights available to those who follow the rules. Similarly, a spouse loses his or her right to survivorship status by willful physical and emotional absence, thereby bringing about "a practical end to the marriage," *Erwin*, 503 Mich at 17, rather than a legal end. As highlighted in *Erwin*, subsections (2)(e)(*i*), (*ii*) and (*iii*) illustrate intentional acts that destroy a marriage and leave one partner legally adrift. Laws disinheriting the selfish partners "are premised on moral policy, eclipsing the usual desiderata of forced-share laws." Hirsch, *Inheritance on the Fringes of Marriage*, 2018 U Ill L Rev 235, 270 (2018).[1]

Divorce is different.

---

[1] Before the advent of no-fault divorce, Michigan law required that the party seeking a divorce prove fault on the part of the other party. See *Rosecrance v Rosecrance*, 127 Mich 322; 86 NW 800 (1901). Desertion was a ground for divorce, characterized in the caselaw as: "(1) cessation of cohabitation, (2) abandonment by his spouse without fault on complainant's part, and (3) that the abandonment or separation was against the will and desire of the party seeking the decree." *Ferguson v Ferguson*, 310 Mich 630, 633; 17 NW2d 777 (1945) (quotation marks and citations omitted). A court could find a marital partner "guilty" of desertion, and divorced against that partner's will. See *Fanner v Fanner*, 326 Mich 466, 469; 40 NW2d 225 (1949) ("We honor defendant's scruples against divorce but she has refused to comply with the conditions of married life and under all the circumstances we must consider that she is guilty of desertion since 1944— therefore, for a period much greater than two years, as plaintiff claims."). It makes sense that the Legislature would treat a spouse who deserts or abandons his or her partner as though divorced for the purposes of survivorship.

During a divorce action, the court considers the parties' incomes, liabilities, premarital property, and abilities to work. Both partners weigh in. Ideally, the court equitably distributes the marital property in a manner that allows both parties to live independently. The divorce judgment eliminates the need for any property distribution after an ex-spouse dies, which is why a divorced spouse is not a surviving spouse. MCL 700.2801(1).

Here, however, the divorce was incomplete when Hermann died. As best we can tell, no one deliberately delayed the process; sometimes, divorces take more time than anticipated or hoped. The point is that by filing for divorce, Anne sought to bring about a *legal* end to her marriage. She did not intend to abandon or desert Hermann by consigning him to a marriage with none of the fundamental attributes of a marriage. Rather, Anne intended to exercise her legal right to seek a divorce decree, and to enforce the rights due her as a divorcing spouse.[2] Those rights potentially included spousal support, and certainly included an equitable division of marital property. Anne's invocation of legal process allowed Hermann to protect his property rights, too.

The common law recognizes the distinction between a divorcing couple and a couple living separately due to one party's desertion. For example, in *In re Ehler's Estate*, 115 Cal App 403, 405-406; 1 P2d 546 (1931), the California Supreme Court found that a widow could not be automatically disinherited for abandonment because a divorce was pending at the time of the husband's death, and whether good cause existed for the separation could not be determined:

> Appellants contend that the widow voluntarily abandoned decedent, and that she thereby waived her right to claim any allowance from his estate. As a matter of fact, the record shows that she left him and instituted an action for divorce against him, which was pending at the date of his death. It was therefore never determined whether or not respondent left voluntarily or for good cause. In view of this we are of the opinion that there was a total absence of any showing that respondent by her conduct lost her statutory rights as the widow of decedent.

Applying statutory language similar to Michigan's, the Iowa Supreme Court held a surviving wife a widow entitled to inherit where she was living apart from her husband and pursing a divorce. *In re Quinn's Estate*, 243 Iowa 1271; 55 NW2d 175 (1952).[3] See also *Born v Born*, 213 Ga 830, 831;

---

[2] In his answer to Anne's complaint for divorce, Hermann averred, "Defendant does not wish to be divorced but accepts the fact that if Plaintiff is requesting the dissolution of the marriage, then joins in the request for a fair and equitable division of property, resources, and debts, based on the present and future needs of both parties . . . ." Anne's right to a divorce under the circumstances is well-established. See *Draggoo v Draggoo*, 223 Mich App 415, 424; 566 NW2d 642 (1997) ("[A] divorce will be granted upon the request of only one of the original marrying parties, i.e., even over the objection of one of the marrying parties."). And a divorce must be granted if a court finds that the marriage is so broken that its "objects . . . have been destroyed," and there is no reasonable likelihood of repair. MCL 552.6(3).

[3] At the time, Iowa allowed only fault-based divorce. The Court elaborated, "It is our conclusion that the statute expresses no legislative intent that the merits of matters pertaining peculiarly to the

102 SE2d 170 (1958) ("A separation by mutual consent of the parties does not constitute desertion, and a libel for divorce by the husband on grounds other than desertion is equivalent to a separation by consent.").

Common sense also dictates that a spouse cannot be disinherited on the ground of "willful absence" if a divorce is pending at the time the other spouse's death. Many spouses separate during divorce proceedings.[4] Often, one leaves the other, physically and emotionally. If MCL 700.2801(2)(e)(*i*) is enforceable based on the time a divorce is pending, delays and gamesmanship are inevitable, particularly when the spouses are elderly or one is ill.[5]

Had there been no error in the circuit court's spousal support ruling, the parties would have been divorced within a year and Carla's claim under MCL 700.2801(2)(e)(*i*) would have died aborning. The delay in getting to final judgment was no one's fault. It is nonsensical to believe that the Legislature intended that pure serendipity could dictate whether Anne was disinherited.

IV

An amendment to MCL 700.2801 that took effect in 2017 provides further support. In its entirety, MCL 700.2801 now provides as follows:

> (1) An individual who is divorced from the decedent or whose marriage to the decedent has been annulled is not a surviving spouse unless, by virtue of a subsequent marriage, he or she is married to the decedent at the time of death. A decree of separation that does not terminate the status of married couple is not a divorce for purposes of this section.

---

divorce court should be inquired into upon applications for widow's allowances." *In re Quinn's Estate*, 243 Iowa 1271, 1273; 55 NW2d 175 (1952). In a no-fault setting, the same rule should apply.

[4] Here, the parties *stipulated* that Anne "shall have the right to occupy the former marital residence . . . subject to" Hermann's right to remove his personal effects.

[5] We respectfully disagree with the dissent's contention that we have disregarded either the language of the statute or the Supreme Court's construction of the language in *In re Estate of Erwin*, 503 Mich 1; 921 NW2d 308 (2018). In *Erwin*, the Supreme Court labored to interpret "willfully absent" in a manner that corresponded contextually with the rest of the statute, and we have done the same. Further, we note that in *Erwin*, the majority held that the inquiry under MCL 700.2801(2)(e)(*i*) "presents a factual question for the trial court to answer: whether a spouse's complete absence *brought about* a practical end to the marriage." *Erwin*, 503 Mich at 27 (emphasis added). Anne's absence during the period that the divorce remained pending did not "bring about" the end of the Von Greiff marriage. The Supreme Court's interpretation of the statute, like ours, "giv[es] effect to the act as a whole." *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003).

(2) For purposes of parts 1 to 4 of this article and of [MCL 700.3203], a surviving spouse does not include any of the following:

(a) An individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment of their marriage, which decree or judgment is not recognized as valid in this state, unless they subsequently participate in a marriage ceremony purporting to marry each to the other or live together as a married couple.

(b) An individual who, following an invalid decree or judgment of divorce or annulment obtained by the decedent, participates in a marriage ceremony with a third individual.

(c) An individual who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights.

(d) An individual who, at the time of the decedent's death, is living in a bigamous relationship with another individual.

(e) An individual who did any of the following for 1 year or more before the death of the deceased person:

(*i*) Was willfully absent from the decedent spouse.

(*ii*) Deserted the decedent spouse.

(*iii*) Willfully neglected or refused to provide support for the decedent spouse if required to do so by law.

(3) *For purposes of [MCL 700.3206], a surviving spouse does not include either of the following:*

(a) An individual described in subsection (2)(a) to (d).

(b) *An individual who is a party to a divorce or annulment proceeding with the decedent at the time of the decedent's death.* [Emphasis added.]

MCL 700.3206 is titled "Funeral arrangements and handling, disposition, or disinterment of decedent's body; right and power to make decisions; priority" and is inapplicable here.

In adding MCL 700.2801(3), the Legislature carved out a new exception to the status of surviving spouse. A spouse who is a "party" to a divorce proceeding at the time of the other spouse's death may not have a say in the deceased's funeral arrangements. That's it—funeral arrangements. The Legislature did not identify "an individual who is a party to a divorce or annulment proceeding with the decedent at the time of the decedent's death" as otherwise excluded from the status of a surviving spouse.

The United States Supreme Court has explained that "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v Harris Co*, 529 US 576, 583; 120 S Ct 1655; 146 L Ed 2d 621 (2000) (quotation marks and citation omitted). This canon of construction, known as *expressio unius est exclusio alterius*, means that "the expression of one thing suggests the exclusion of all others." *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003). The enactment of MCL 700.2801(3)(b) implies that divorcing spouses were not intended by the Legislature to fall within the categories of spouses excluded from inheriting under MCL 700.2801(2)(e). The Legislature specifically considered parties to an ongoing divorce in the context of spousal survivorship and limited only their ability to make funeral arrangements. It makes sense that no other limitation was intended. See *Pittsfield Charter Twp*, 468 Mich at 711 ("[T]he Legislature, by explicitly turning its attention to limits on the county siting power and deciding on only one limitation, must have considered the issue of limits and intended no other limitation.").

Anne Jones-Von Greiff had a legal right to divorce Hermann Von Greiff. Had the divorce proceeded a tad more swiftly, she would have been entitled to spousal support and, presumably, a fair share of the marital property. Hermann's untimely death abated the divorce, but Anne's participation in a legal divorce process, regardless of its length, did not disqualify her from survivorship status. As a matter of law, Anne survived Hermann as his wife and is entitled to the benefits of that legal status.

We reverse.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey