# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

*In re* ESTATE OF HERMANN A VON GREIFF

Docket No. 161535. Argued on application for leave to appeal December 9, 2021. Decided June 10, 2022.

Carla J. Von Greiff petitioned the Marquette Probate Court under MCL 700.2801(2)(e) of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., seeking a declaration that Anne Jones-Von Greiff was not the surviving spouse of Carla's father, Hermann A. Von Greiff. Anne filed for divorce from Hermann on June 1, 2017. Before the probate court entered the judgment of divorce, however, Hermann died on June 17, 2018. In her petition, Carla asserted that Anne had been willfully absent from Hermann for a year or more before his death and that, therefore, Anne was not entitled to inherit as Hermann's surviving spouse under EPIC. The probate court, Cheryl L. Hill, J., ruled that Anne was not a surviving spouse under MCL 700.2801(2)(e) because she had been intentionally, physically, and emotionally absent from Hermann for more than a year before his death. Anne appealed in the Court of Appeals, MARKEY, P.J., and GLEICHER, J. (M. J. KELLY, J., dissenting), which determined that Anne was not willfully absent under MCL 700.2801(2)(e)(*i*) because she did not intend to abandon or desert Hermann but was exercising her legal right to seek a divorce and to enforce her rights as a divorcing spouse during the year preceding his death. 332 Mich App 251 (2020). The Supreme Court ordered and heard oral argument on whether to grant Carla's application for leave to appeal or take other action. 507 Mich 904 (2021).

In an opinion by Justice CAVANAGH, joined by Chief Justice MCCORMACK and Justices BERNSTEIN, CLEMENT, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

When a party files an action for divorce and the other spouse subsequently dies before the divorce is finalized, there is a rebuttable presumption that the surviving spouse was not willfully absent from the decedent spouse under MCL 700.2801(2)(e)(*i*). The challenging party can rebut the presumption by establishing that, under the totality of the circumstances, the surviving spouse's communications with the decedent spouse, prior to their death, were inconsistent with a recognition of the continued existence of the legal marriage. However, if there were spousal communications, whether direct or indirect, during the divorce proceedings that were consistent and made in connection with the legal termination of the marriage, then the surviving spouse was not willfully absent and is entitled to the benefits of a surviving spouse under the statute. In this case, Carla did not sustain her burden to show that Anne was willfully absent given that Anne was

pursuing the entry of a divorce judgment via communications with the decedent through her attorney. Accordingly, the judgment of the Court of Appeals was affirmed on different grounds.

1. Under MCL 700.2801(2)(e)(*i*), an individual is not a surviving spouse if, for one year or more before the decedent spouse's death, the individual was "willfully absent from the decedent spouse." The burden is on the party challenging a legal spouse's status to show that the spouse was, in fact, "willfully absent from the decedent spouse." In order to establish that the legal spouse was willfully absent, the challenging party must show that, under the totality of the circumstances, (1) there was a complete absence from the decedent spouse, (2) the absence was continuous for at least one year before the spouse's death, and (3) the absence was willful—i.e., that the surviving spouse acted with the specific intent to be away from the decedent spouse for a continuous period of one year or more before the decedent spouse's death.

2. The Court of Appeals majority held that Anne was not willfully absent under MCL 700.2801(2)(e)(*i*) as a matter of law because she had filed for divorce. This per se rule was unwarranted, given that the phrase "willfully absent from the decedent spouse" does not encompass a categorical rule that precludes a divorcing spouse from losing the benefits of a surviving spouse under the statute. The Court of Appeals majority also erred by relying on MCL 700.2801(3) and the *expressio unius est exclusio alterius* (express mention in a statute of one thing implies the exclusion of other similar things) canon of statutory interpretation in creating a per se rule. The majority noted that MCL 700.2801(3)(b) provides that, for the purposes of making funeral arrangements, a surviving spouse does not include an individual who is a party to a divorce or annulment proceeding with the decedent spouse at the time of the decedent's death. Therefore, the majority reasoned, in all other contexts, a divorcing spouse is necessarily a surviving spouse. However, MCL 700.2801(3) was enacted after MCL 700.2801(2)(e)(*i*), and the exclusion in MCL 700.2801(3)(b) of a party to a divorce action from being a surviving spouse for purposes of making funeral arrangements indicates only that the Legislature did not intend to categorically preclude a divorcing spouse from being considered to be a surviving spouse in other contexts. The Court of Appeals majority also erred by relying substantially on the common law of other jurisdictions in interpreting EPIC, which is a comprehensive statutory scheme, and in particular, the "willfully absent" provision, which is unique to Michigan law.

3. The probate court, relying on *In re Erwin*, 503 Mich 1 (2018), and evidence that the spouses were not in direct contact and did not see each other for over a year before Hermann's death, concluded that Anne intended to be physically and emotionally absent from Hermann, which resulted in the practical end of the marriage. But *Erwin* did not limit the court's inquiry to *direct* contact between spouses. Rather, in holding that physical absence alone was insufficient to establish willful absence, *Erwin* recognized that "absent" can mean "exhibiting inattentiveness toward another." A person is not exhibiting inattentiveness if they are communicating with a spouse indirectly, such as through their attorney. The record suggested that Anne and Hermann were in frequent contact with each other through their attorneys while litigating the divorce action as they worked out a settlement of everything except spousal support before Hermann died. The fact that the parties were in communication, by itself, did not defeat a finding of willful absence. Rather, a certain type of communication was required to defeat this finding. When one spouse unilaterally and without consideration of the other spouse's desires cuts off all direct or indirect contact with their spouse for over a year, they have taken action inconsistent with the very

existence of a legal marriage. However, when there has been direct or indirect communication between spouses, the trial court must assess the totality of the circumstances to determine whether the parties' communications were consistent with a recognition that a legal marriage still existed at the time of the decedent spouse's death. In the context of a divorce action, a court should presume that the surviving spouse was not willfully absent. But the trial court must consider the totality of the circumstances in determining willful absence, and the challenging party bears the burden of rebutting the presumption that direct or indirect communications during a divorce proceeding defeat a finding that a spouse was willfully absent.

4. Carla did not sustain her burden to show that Anne was willfully absent notwithstanding her communication with Hermann through their attorneys during the divorce proceeding. There was no evidence that Anne failed to participate to expeditiously resolve the divorce action, and the nearly complete settlement worked out by the parties suggested frequent and detailed communication between Anne and Hermann through their attorneys. Under these circumstances, Anne was not willfully absent from Hermann for more than a year before his death.

Affirmed.

Justice ZAHRA, joined by Justice VIVIANO, dissenting, noted that in *Erwin* the Supreme Court held that a person is willfully absent from their decedent spouse under EPIC if that person engaged in intentional acts that brought about a situation of divorce in practice, even when the legal marriage was not formally dissolved. The probate court applied the "totality of the circumstances" test for willful absence from *Erwin* and found that Anne was willfully absent from Hermann under MCL 700.2801(2)(e)(*i*). Justice ZAHRA opined that the majority unjustifiably altered the *Erwin* test and created a per se rule with no connection to the statute. The majority concluded that *Erwin* did not limit the "willfully absent" inquiry to direct contacts between spouses and that communication driven solely by the parties' legal counsel is sufficient to defeat a finding that a spouse was intentionally and completely emotionally absent from the decedent spouse. In so concluding, the majority improperly modified the *Erwin* test in a manner at odds with a fair and reasonable reading of *Erwin*. The *Erwin* test directed the court to ask whether, given the totality of the circumstances, Anne intended to be physically and emotionally absent from Hermann, resulting in a practical end to their marriage. Anne was physically absent from Hermann for 13 months before his death, and communicated with him only through her legal counsel during the divorce proceedings. According to Justice ZAHRA, this behavior plainly constituted a complete physical and emotional absence that resulted in the practical end of the marriage. Further, Justice ZAHRA objected to the classification of attorney-driven communications as emotionally supportive, connective, and caring, and therefore as sufficient to establish a lack of willful absence under MCL 700.2801(2)(e)(*i*). An attorney's professional communications during divorce proceedings were not equivalent to spousal communications, let alone spousal communications that are emotionally supportive. Therefore, it cannot be that communication via legal counsel automatically negates a finding of complete emotional absence. Moreover, because there will always be communication by and through attorneys during divorce proceedings, it was impossible for there to be willful absence under the statute, according to the terms of the majority's test. The majority's per se rule was not contemplated by either MCL 700.2801(2)(e)(*i*) or *Erwin*.

Justice VIVIANO, dissenting, joined Justice ZAHRA's dissent in full, but wrote separately to emphasize that the effect of the majority's opinion was to overrule its decision in *Erwin*, at least in the context of pending divorce actions. *Erwin* held that for a surviving spouse to forfeit their entitlement to the intestate share of the decedent's estate under MCL 700.2801(2)(e)(*i*), the surviving spouse must have been emotionally absent from the relationship for one year or more before the decedent's death. Justice VIVIANO objected that the majority opinion created a presumption that when a divorce action has been filed, even by the surviving spouse, the surviving spouse is not willfully absent and that the majority had created a new totality-of-the-circumstances test to determine whether indirect communications between opposing counsel in a divorce action were sufficient to negate a finding of willful absence. *Erwin* placed the focus on whether the departing spouse was emotionally absent, but the majority boiled this requirement down to the question of whether any contact at all was maintained between the parties while a divorce action was pending. Therefore, the focus of the inquiry was no longer whether the departing spouse continued to provide emotional support. Justice VIVIANO opined that, according to the majority, when a divorce action has been filed, the emotional-absence component of the statute vanished— with the result that the same statutory text has different meanings in different factual contexts. This was contrary to normal interpretive principles and rendered the statute meaningless. Justice VIVIANO stated that a more principled way to reach the majority's outcome would have been to overrule its opinion in *Erwin* and adopt the *Erwin* dissent, which would have allowed the statute to maintain a single interpretation. But Justice VIVIANO stated that it would have been better for the law to retain the interpretation of the statute offered by *Erwin* than to tack another flawed interpretation onto the statute.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 10, 2022

STATE OF MICHIGAN

SUPREME COURT

*In re* ESTATE OF HERMANN A.
VON GREIFF.

CARLA J. VON GREIFF,

Petitioner-Appellant,

v

ANNE JONES-VON GREIFF,

Respondent-Appellee.

No. 161535

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

Under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., a

"surviving spouse" has certain rights upon the death of their spouse, including the right to

receive a share of the estate. See MCL 700.2202(1) and (2).[1] But a spouse can lose these rights if they are "willfully absent from the decedent spouse" for more than a year before that spouse's death. MCL 700.2801(2)(e)(*i*). This reflects the legislative intent that one should not receive the benefits of a "surviving spouse" if one has engaged in "intentional acts that bring about a situation of divorce in practice, even when the legal marriage has not been formally dissolved." *In re Erwin*, 503 Mich 1, 15; 921 NW2d 308 (2018). The question in this case is whether one who has filed for divorce but has not yet obtained that divorce when their spouse dies is "willfully absent" and therefore ineligible for benefits as a "surviving spouse."

The Court of Appeals majority held that, as a matter of law, one cannot be considered "willfully absent" under MCL 700.2801(2)(e)(*i*) while a divorce proceeding is ongoing. We disagree; there is no statutory basis for a categorical rule that filing for divorce precludes a finding of willful absence. However, the filing of a divorce action and communications between spouses through their attorneys while in the process of obtaining a divorce are strong evidence that the spouse was not absent, and we hold that the filing of a divorce action creates a presumption that the spouse was not willfully absent. If the spousal communications during the divorce proceedings are consistent and made in

---

[1] MCL 700.2202(1) addresses a surviving spouse's right to recover if the decedent dies intestate, while MCL 700.2202(2) addresses a surviving spouse's right to recover if the decedent died with a will. Because the decedent in this case died intestate, only MCL 700.2202(1) applies. However, the determination of whether one is considered a surviving spouse under EPIC will affect one's rights to recover from the estate in either scenario.

2

connection with the legal termination of the marriage, then the spouse is not willfully absent and is entitled to the benefits of a surviving spouse.

In this case, the decedent's daughter, Carla Von Greiff, has failed to rebut the presumption that the purported surviving spouse, Anne Jones-Von Greiff, was not willfully absent, given that Anne promptly filed for divorce and pursued the entry of a divorce judgment via communications with the decedent through her attorney. Accordingly, we affirm the judgment of the Court of Appeals on different grounds.

## I. FACTS AND PROCEDURAL HISTORY

Carla is the daughter of the decedent, Hermann Von Greiff. Hermann died intestate on June 17, 2018. At the time of his death, Hermann was legally married to Carla's stepmother, Anne, although Anne and Hermann were in the process of getting divorced. Carla petitioned the probate court for a declaration that Anne was willfully absent for more than a year before Hermann's death and therefore was not his surviving spouse under MCL 700.2801(2)(e)(*i*).

Anne and Hermann were originally married in 2000, divorced several months later, and then remarried in 2003. The marriage was rocky, as both parties suffered physical and mental health problems and Hermann admitted to infidelity. On May 16, 2017, Hermann and Anne argued over whether Hermann should undergo spinal fusion surgery. Hermann got very angry and told Anne to leave the marital home. After this fight, Anne believed that Hermann wanted her to permanently leave the home and that he intended to seek a divorce. Two days later, Carla arrived to take Hermann to his surgery, and Anne collected her belongings and moved out of the marital home. Hermann asked her to stay, but Anne

refused. Anne did not see Hermann or have any direct contact with him after May 18, 2017.[2]

On June 1, 2017, Anne filed for divorce. She also sought and eventually obtained an ex parte order that (1) granted her exclusive use of the marital home and required Hermann to pay all of the expenses associated with the home, (2) ordered Hermann to restore the marital accounts,[3] and (3) described how the parties' assets would be divided, preserved, and used during the pendency of the divorce proceedings. On July 17, 2017, the parties stipulated to a modified ex parte order. The modified order still provided Anne with the exclusive right to live in the home but gave Hermann or his agent the right to enter the home to retrieve his belongings if he provided Anne seven days' notice. The modified order also provided, in greater detail, how the financial assets of the parties were to be maintained and used during the pendency of the divorce proceedings.

After his surgery, Hermann resided in an assisted living facility in Michigan and eventually moved to Florida. Hermann did not contact Anne or inform her of his new residences, and Anne did not ask him where he was living. On April 18, 2018, a hearing was held solely on the issue of spousal support—all other issues pertaining to the divorce had been resolved by the parties. The probate court issued an opinion granting Anne spousal support on May 29, 2018. The opinion stated that Anne could include the court's

---

[2] Anne exchanged text messages with Carla regarding Hermann's condition after his surgery. Carla and Anne stopped exchanging messages on May 31, 2017.

[3] Before she filed for divorce, Anne checked the status of a joint bank account she held with Hermann and discovered that much of the money had been withdrawn from the account.

4

findings of fact in the judgment. The judgment of divorce was submitted on notice of presentment, and objections were set to be heard. See generally MCR 2.602. However, Hermann died on June 17, 2018, before the scheduled hearing, and the matter was subsequently dismissed without entry of the judgment.

As previously mentioned, Carla filed a petition in the probate court seeking a declaration that Anne was not Hermann's surviving spouse because she was willfully absent for more than a year before Hermann's death. Relying on this Court's decision in *In re Erwin*, the probate court concluded that Anne had willfully absented herself from Hermann for more than a year before he died (from May 18, 2017, until Hermann's death on June 17, 2018), and therefore, she was not Hermann's "surviving spouse." The court found that Anne intended to be physically absent on the basis of her decision to seek an ex parte order that kept Hermann from entering the marital home and her admission that she did not see Hermann between May 18, 2017 and June 17, 2018. The court also found that Anne intended to be emotionally absent from Hermann for more than a year before he died, given that she acknowledged that she had no direct contact with him and provided him no emotional support. The court further noted that Anne acknowledged that she and Hermann effectively lived as a divorced couple during this time and that she intended to leave the marriage and obtain a divorce.

Anne appealed the probate court's decision and the Court of Appeals reversed in a split decision. *In re Estate of Von Greiff*, 332 Mich App 251; 956 NW2d 524 (2020). The majority held that, as a matter of law, any period of time consumed by a divorce proceeding did not constitute "willful absence" that would disinherit an otherwise qualified surviving spouse. Judge M. J. KELLY dissented, arguing that no such exemption was contained in

5

the statute and that the probate court did not clearly err by finding that Anne was willfully absent from Hermann under the standard in *Erwin*. Carla appealed in this Court, and we ordered oral argument on the application, directing the parties to address "whether the period of time after the filing of a complaint for divorce is counted when considering whether a spouse was 'willfully absent' from the decedent for more than a year before his or her death. MCL 700.2801(2)(e)(*i*); *In re Estate of Erwin*, 503 Mich 1 (2018)." *In re Estate of Von Greiff*, 507 Mich 904 (2021).

## II. LEGAL STANDARD

MCL 700.2801 describes who is not considered a "surviving spouse" for the purposes of EPIC. MCL 700.2801(1) provides that one is not a "surviving spouse" if that individual is divorced from the decedent or the marriage has been annulled at the time of death. MCL 700.2801(2) describes various circumstances under which, although the marriage has not been legally terminated at the time of death, an individual is nonetheless not considered a "surviving spouse." Finally, MCL 700.2801(3)—added in 2016—creates distinct rules for determining when one is a "surviving spouse," but only for the purposes of MCL 700.3206, which governs who has the authority to make funeral arrangements for the decedent.[4] Because Anne was legally married to Hermann at the time of his death and funeral arrangements are not at issue here, the pertinent section is MCL 700.2801(2).

---

[4] A person is not considered a "surviving spouse" for the purposes of MCL 700.3206 if they are "[a]n individual described in [MCL 700.2801(2)(a)] to (d)" or "[a]n individual who is a party to a divorce or annulment proceeding with the decedent at the time of the decedent's death." MCL 700.2801(3). Under MCL 700.3206(3), the "surviving spouse" serves as the funeral representative for the decedent unless the decedent specifically designated someone else to perform that task or the decedent was a service member and

6

Carla claims that Anne was not Hermann's "surviving spouse" pursuant to MCL 700.2801(2)(e)(*i*), which provides that an individual is not a "surviving spouse" if, "for 1 year or more before the death of the deceased person," that individual "[w]as willfully absent from the decedent spouse." MCL 700.2801(2)(e)(*i*).[5] The proper interpretation of the term "willfully absent from the decedent spouse" is a question of statutory interpretation that is reviewed de novo. *Erwin*, 503 Mich at 9. A trial court's factual findings in making a determination of whether a spouse was willfully absent are reviewed for clear error. *Id*.

"The burden is on the party challenging a legal spouse's status to show that the spouse was in fact 'willfully absent' for the year or more leading up to the decedent's death." *Id*. at 17. A showing of physical absence alone is not enough for a spouse to be considered willfully absent under MCL 700.2801(2)(e)(*i*). *Id*. at 16.[6] Rather, in order to

_____

someone has been designated by law to direct the disposition of the service member's remains.

[5] A person is also not considered a "surviving spouse" under EPIC if, "for 1 year or more before the death of the deceased person," they either "[d]eserted the decedent spouse," MCL 700.2801(2)(e)(*ii*), or "[w]illfully neglected or refused to provide support for the decedent spouse if required to do so by law." MCL 700.2801(2)(e)(*iii*). Neither of these provisions is at issue here.

[6] The majority opinion in *Erwin* suggested that a challenger is required to show, at minimum, a physical absence from that deceased spouse in order to be considered willfully absent. *Id*. at 27. Justice CLEMENT—whose vote was necessary to create a majority— joined the majority opinion "except to the extent the opinion addresses whether evidence of physical absence is needed to support a finding that a spouse was willfully absent." *Id*. at 28. Because it is clear that Anne was physically absent from Hermann for more than a year before his death, we need not decide whether one can be physically present yet still be considered willfully absent under MCL 700.2801(2)(e)(*i*).

7

sustain their burden, the party seeking to disinherit the surviving spouse, i.e., the challenging party, must show that, under the "totality of the circumstances," there existed a "complete absence" from the decedent spouse. *Id*. at 17. This complete absence "must be continuous for at least a year leading up to the spouse's death." *Id*. at 23 n 15.

Moreover, this complete absence must be "willful," that is, the spouse must "act with the intent to be away from his or her spouse for a continuous period of one year immediately preceding the death." *Id*. at 11. "[T]he statute does not require the surviving spouse to make a continuous effort to maintain the marital relationship. . . . [T]he inquiry is into whether the surviving spouse did the 'absenting,' not whether the surviving spouse did enough to prevent the absence." *Id*. at 23 n 15. Additionally, it is irrelevant whether the spouse intended to abandon their marital rights and dissolve the marriage; the question is only whether there existed an intent to be absent from the spouse. *Id*. at 24-25.

To summarize, in order to establish that a decedent's spouse is not entitled to the benefits of a "surviving spouse" under MCL 700.2801(2)(e)(*i*), the challenging party must show, under the totality of the circumstances, that the surviving spouse: (1) was completely absent from the decedent spouse, (2) that this absence persisted for a continuous period of at least one year before the decedent's death, and (3) that the surviving spouse acted with a specific intent to be absent from the decedent spouse.

### III. ANALYSIS

Anne was legally married to Hermann when he died, but she intended to divorce him and did not contact him for over a year prior to his death, except through her attorney

8

with regard to their ongoing divorce proceedings.  Under these circumstances, was Anne willfully absent from Hermann?

The Court of Appeals majority held that, as a matter of law, Anne was not willfully absent under MCL 700.2801(2)(e)(*i*) simply because she had filed for divorce.  *In re Von Greiff*, 332 Mich App at 256-257.  Such a per se rule is unwarranted.  As explained more fully below, the phrase "willfully absent from the decedent spouse" does not encompass a categorical rule that precludes a divorcing spouse from losing the benefits of a "surviving spouse."  It is possible that a divorcing spouse could act with the intention of being completely and continuously absent for the year preceding the decedent's death.  Moreover, there is no other statutory provision that would support such a per se rule.

The majority's reliance on MCL 700.2801(3) and the *expressio unius est exclusio alterius* canon of statutory interpretation in creating a per se rule was misplaced.  See *Bronner v Detroit*, 507 Mich 158, 173 n 11; 968 NW2d 310 (2021) ("*Expressio unius est exclusio alterius* means '[e]xpress mention in a statute of one thing implies the exclusion of other similar things.' "), quoting *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931) (alteration in *Bronner*).  MCL 700.2801(3)(b) was amended by 2016 PA 57 to provide that, for the purposes of determining who may make decisions regarding the decedent's funeral arrangements under MCL 700.3206, a surviving spouse does not include "[a]n individual who is a party to a divorce or annulment proceeding with the decedent at the time of the decedent's death."  The majority reasoned that because this provision precludes a party to a divorce action from being a surviving spouse only for the purposes of funeral arrangements, this means that in all other contexts a divorcing spouse necessarily is a "surviving spouse."  But MCL 700.2801(3)(b) was enacted *after* the "willfully absent"

9

provision in MCL 700.2801(2)(e)(*i*), and this Court has recognized that it is questionable "to infer legislative intent through silence in an earlier enactment, which is only 'silent' by virtue of the subsequent enactment." *People v Watkins*, 491 Mich 450, 482; 818 NW2d 296 (2012). Even assuming that the enactment of MCL 700.2801(3)(b) has some bearing on the appropriate interpretation of "willful absence," the amendment's exclusion of a party to a divorce action from being a "surviving spouse" for purposes of making funeral arrangements indicates only that the Legislature did not intend to *categorically preclude* a spouse who files for divorce from being a "surviving spouse" in other contexts. This is entirely different from concluding, as the majority did, that one who files for divorce is *necessarily* a surviving spouse for all purposes other than funeral arrangements.

The Court of Appeals majority also erred by relying substantially on the common law of other jurisdictions to interpret or supplement the provisions of EPIC, which is a comprehensive scheme governing the transfer of a decedent's property. See *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006) ("In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter.") (quotation marks and citation omitted). The common law of other jurisdictions can provide persuasive authority when developing Michigan's common law, see, e.g., *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328, 341-342; 968 NW2d 397 (2021), but it is generally inappropriate to rely on such authority when interpreting a comprehensive Michigan statutory scheme unless the statutory scheme incorporates a common-law term of art. See MCL 8.3a; *Hodge v State Farm Mut Auto Ins*

10

*Co*, 499 Mich 211, 218 n 18; 884 NW2d 238 (2016) (citing caselaw from other states in support of its interpretation of a common-law term of art incorporated into a Michigan statute). Neither the Court of Appeals majority nor any party to this case has suggested that the term "willfully absent" is a common-law term of art such that the understanding of this term in other jurisdictions could be useful to determining the Legislature's intent in enacting this provision. To the contrary, this particular statutory provision—first enacted in 1978 as part of the Revised Probate Court (RPC) and retained in 2000 when the Legislature adopted EPIC to replace the RPC—"is unique to Michigan law." *Erwin*, 503 Mich at 31 n 8 (VIVIANO, J., dissenting).[7] Therefore, it was inappropriate to rely on the common law of other jurisdictions in interpreting the "willfully absent" provision. See *Ross v Consumers Power Co*, 415 Mich 1, 18; 327 NW2d 293 (1982) (noting the inapplicability of caselaw from other states where the Michigan statute at issue was unique).

The probate court correctly viewed this as a factual inquiry that required an analysis of the totality of the circumstances. However, the probate court applied an incorrect legal standard when assessing whether Anne was willfully absent from Hermann. Relying on *Erwin*, the probate court concluded that Anne intended to be physically and emotionally absent from Hermann, resulting in the end of the marriage for practical purposes. The court relied on evidence that Anne and Hermann did not see each other and were not in *direct*

---

[7] The *sui generis* nature of this provision is reflected by the fact that both the majority and dissenting opinions in *Erwin* sought to interpret the phrase according to its plain meaning and not as a common-law term of art. See *Erwin*, 503 Mich at 10-11; *id*. at 32-36 (VIVIANO, J., dissenting).

contact for over a year before Hermann's death. But nothing in *Erwin* limits the inquiry to *direct* contacts between spouses. To the contrary, in holding that physical absence alone is insufficient to be considered willfully absent, *Erwin* recognized that the term "absent" can mean that one is "exhibiting inattentiveness toward another." *Erwin*, 503 Mich at 10. A person is not "exhibiting inattentiveness toward another" if they are communicating with a spouse indirectly, such as through their attorneys. In this case, it is clear from the record that Anne and Hermann were in contact with each other through their attorneys while litigating the divorce action. At minimum, we know that they stipulated to a modification of the original ex parte order regarding living arrangements and use of finances, and they worked out a settlement of everything but spousal support before Hermann's death, which suggests frequent and detailed communications between the attorneys and their respective clients. The probate court was required to assess the nature and extent of these communications when determining whether Anne was willfully absent and erred by failing to do so.

The fact that the parties were communicating, standing alone, does not defeat a finding of willful absence. Rather, as suggested by *Erwin*, only a certain type of communication is sufficient to defeat such a finding. The *Erwin* Court stated that a finding of willful absence requires a "complete physical and emotional absence" that "result[s] in an end to the marriage for practical purposes." *Id*. at 27. This framing made sense in the context of that case, in which the spouses were living apart but neither had filed for divorce and there was no evidence that either spouse wanted to end the marital relationship. See *id*. at 25-27. But the Court did not address what "absence" would look like in the context of a spouse who intends to legally end the marriage by filing for divorce. Nor did the Court

12

indicate that a presence sufficient to defeat a finding of willful absence had to be consistent with the behavior of one who intended to remain married. To the contrary, *Erwin* specifically held that it was irrelevant to the willful-absence inquiry whether a spouse intended to abandon their marital rights. *Id*. at 24-25. Therefore, we reject the probate court's understanding of *Erwin* as requiring an emotional presence akin to what one would provide if they intended to remain married in order to defeat a finding of willful absence.[8]

Instead, we conclude that a spouse might not be willfully absent even if they intend to legally terminate the marriage and act consistently with that intent. In holding that the term "absence" is not defined solely by physical absence, *Erwin* examined MCL 700.2801(2)(e) as a whole and concluded that its provisions "describe acts on behalf of a surviving spouse that for all intents and purposes are inconsistent with the very existence of a legal marriage." *Erwin*, 503 Mich at 15; see also *id*. at 21 (concluding that the statutory scheme as a whole "contemplates that one only loses his or her status as a 'surviving spouse' if he or she takes action that is akin to a complete repudiation of the marriage"). Consistent with this context, we hold that a spouse is only "absent" if they interact with their spouse in a manner that is "inconsistent with the very existence of a legal marriage." When one spouse unilaterally and without any consideration of the other spouse's desires cuts off all direct or indirect contact with their spouse for over a year, they have taken action "inconsistent with the very existence of a legal marriage." However, when there are communications between the spouses, whether directly or indirectly, the trial court must

---

[8] When there is an emotional presence that reflects a desire to retain the marriage bonds, this evidence will be sufficient to defeat a finding of willful absence under *Erwin* notwithstanding a physical absence.

13

assess the totality of the circumstances to determine whether these communications are consistent with a recognition that the legal marriage still exists.[9]

Generally, when a spouse is "emotionally absent" from the decedent spouse as contemplated by *Erwin*, they have taken action "inconsistent with the very existence of a legal marriage." But a divorce action is different. By its nature, filing a complaint for divorce tends to recognize the existence of a legal marriage—if the marriage did not exist, why would one need to seek a divorce? Thus, in the context of a divorce action, a court should presume that the surviving spouse was not willfully absent. Divorce is a final act that is legally and practically understood to mean that the parties are married until the final act is completed. Divorce actions can easily last more than one year, especially when the marriage is lengthy, there are children involved, or the parties' assets are complex. It is also common, and sometimes necessary, for divorcing spouses to live separately and cease all direct contact while a divorce is pending. This reality supports a holding that filing for divorce creates a rebuttable presumption that one is not willfully absent.[10]

---

[9] This is an objective inquiry and does not turn on whether the spouse subjectively believed that the legal marriage still existed or that they were acting in a manner inconsistent with a recognition of the legal marriage. In other words, while the spouse must have intended to act in a particular manner that was inconsistent with a recognition of the legal marriage, they need not have subjectively intended for their actions to actually be inconsistent with a recognition of the legal marriage. Contrary to the understanding of the dissenting justices, we do not assert that communications between attorneys while seeking a divorce are "emotionally supportive" communications. Rather, we hold that where there is a pending divorce action, the willful-absence determination does not turn on whether the communications were emotionally supportive. Accordingly, a lack of emotionally supportive communications does not mandate a finding of willful absence.

[10] Justice VIVIANO is incorrect when he asserts that we are holding that "the same statutory text has different meanings in different factual contexts." Instead, we merely recognize that the willful-absence inquiry is fact specific and that, under the appropriate legal

14

However, it is possible, under rare circumstances, that a challenging party could show that the spouse who filed for divorce nevertheless did not behave in a manner consistent with a recognition of the continued existence of the legal marriage for a year prior to the spouse's death. We need not catalog in this opinion the circumstances in which willful absence might be shown despite continuing communications during a divorce action. But we emphasize that trial courts must consider the totality of the circumstances in making this determination and that the challenging party bears the burden to rebut the presumption that direct or indirect communications during a divorce proceeding defeat a finding that a spouse was willfully absent. *Id*. at 17.[11]

## IV. APPLICATION

Carla has not sustained her burden to show that Anne was willfully absent notwithstanding her communications with Hermann through their attorneys while attempting to secure an attorney-negotiated judgment of divorce. There is no evidence that Anne failed to participate with Hermann to expeditiously resolve the divorce action. To the contrary, Anne filed for divorce less than two weeks after their last direct contact and

---

standard, the filing of a divorce action is highly relevant to this inquiry. It is hardly a "stupefying departure from normal interpretive principles" to examine how a legal standard applies under a particular factual scenario. And we reiterate that neither spouse in *Erwin* had filed for divorce, so the Court did not address that factual scenario.

[11] Contrary to the repeated assertions of the dissenting justices, we do not hold that there is a per se rule that *any* communication during a pending divorce action necessarily defeats a finding of willful absence—we need not opine on facts not presently before the Court. Rather, we merely hold that there is a rebuttable presumption that such communications defeat a finding of willful absence and that, on the facts of this case, Carla has not rebutted this presumption.

the judgment of divorce was close to being entered when Hermann died scarcely a year after filing. Moreover, during the divorce proceedings both Anne and Hermann stipulated through their attorneys to the occupancy of the marital home and the appropriate use of marital funds, and they worked out a settlement of everything but spousal support before Hermann's death, which implies frequent and detailed communications between the spouses through their attorneys. Under these circumstances, Anne was not willfully absent from Hermann for more than a year before his death.[12]

## V. CONCLUSION

A party who files an action for divorce is not thereby precluded from being considered "willfully absent from the decedent spouse" under MCL 700.2801(2)(e)(*i*). However, the filing of such an action is strong evidence that the spouse was not absent, and the challenging party bears the burden of rebutting the presumption that the spouse was not absent. The challenging party can satisfy their burden by showing that, under the totality of the circumstances, the surviving spouse's communications, or lack thereof, were

---

[12] We agree with the dissenting justices that the probate court's factual findings are entitled to deference. But we are not deciding this case on the basis of the trial court's findings as to the actions and intentions of Anne and Hermann, which we assume for the sake of this opinion were not clearly erroneous. Instead, we hold that the trial court erred in analyzing these findings when concluding that Anne was willfully absent. See *People v Douglas*, 496 Mich 557, 599; 852 NW2d 587 (2014) (distinguishing between the trial court's factual findings and the court's analysis of the legal effect of those factual findings); *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 364; 824 NW2d 609 (2012) (holding that the trial court did not clearly err in its factual findings but the trial court committed legal error in assessing the legal implications of those findings.) More specifically, the trial court misunderstood the legal significance of the communications between Anne and Hermann through their attorneys while seeking a divorce when assessing whether Anne was willfully absent. This erroneous application of the appropriate legal standard is reversible error.

16

inconsistent with a recognition of the continued existence of the legal marriage.  On this record, Carla has not satisfied that burden.  Accordingly, we affirm the judgment of the Court of Appeals.

Megan K. Cavanagh
Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement
Elizabeth M. Welch

17

*In re* ESTATE OF HERMANN A.
VON GREIFF.

CARLA J. VON GREIFF,

       Petitioner-Appellant,

v                              No. 161535

ANNE JONES-VON GREIFF,

       Respondent-Appellee.

ZAHRA, J. (*dissenting*).

In 2018, this Court interpreted the very same provision of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., that is now before us: MCL 700.2801(2)(e)(*i*). In that case, *In re Erwin*,[1] we held that a person who is "willfully absent" from their spouse for more than a year before the spouse's death is ineligible to receive "surviving spouse" benefits under MCL 700.2202(1) and (2) if that person has engaged in "intentional acts that bring about a situation of divorce in practice, even when the legal marriage has not been formally dissolved."[2] In the instant case, the probate court made detailed factual findings on that very issue. On that basis, and applying the totality-

---

[1] *In re Erwin*, 503 Mich 1; 921 NW2d 308 (2018).

[2] *Id*. at 15.

of-the-circumstances test for willful absence that this Court set forth in *Erwin*, the probate court found that respondent, Anne Jones-Von Greiff, was "willfully absent" from the decedent, Hermann A. Von Greiff, under MCL 700.2801(2)(e)(*i*). The probate court's factual findings are reviewed for clear error and are owed respectful deference from this Court. The majority opinion makes no attempt, however, to call into question the probate court's factual findings, nor could it, given how clear and undisputed they are. Instead, to escape the import of the factual record under *Erwin*'s willful-absence test, the majority opinion simply rewrites that test. Then, on the basis of its brand-new test, which creates a per se rule that is untethered from the statutory text, the majority opinion affirms the judgment of the Court of Appeals. I respectfully dissent and would reverse the Court of Appeals.

## I. BASIC FACTS

Anne left the marital home over Hermann's protests on May 18, 2017. Anne departed two days after she and Hermann had an argument about whether Hermann should undergo spinal surgery. Thereafter, Anne and Hermann had no direct contact.[3] On May 31, 2017, Anne signed a complaint for divorce, which was filed on June 1, 2017. And on June 2, 2017, that complaint was served on Hermann while he was still in the hospital

---

[3] Anne also testified that her last personal, *indirect* contact with Hermann was through text messages that she sent to his daughter, Carla J. Von Greiff, inquiring into Hermann's well-being; the last text exchange occurred on May 31, 2017. In addition, Carla texted Anne on at least two occasions between May 18 and May 31, 2017, asking her to come to the hospital to see and speak with Hermann. But because Anne did not think it was a good idea, she did not visit Hermann in the hospital.

recovering from his surgery.[4]  Alongside her complaint for divorce, Anne moved for an ex

parte order, seeking (among other things not relevant to this appeal) the exclusive right to

live in the marital home, which was granted.[5]  From May 18, 2017, until Hermann's death

more than a year later, on June 17, 2018, Anne testified that she provided no emotional

support to Hermann.  The probate court provided a succinct summary of this unfortunate

situation:

> At no time after filing the divorce [on June 1, 2017], did Anne . . . ever
> express a desire to live with Hermann.  [Anne] further agreed that after the
> filing of the divorce, she never had an intention to return to the marriage.  *She
> agreed that for all intents and purposes, that she and Hermann lived as a
> divorced couple from May 18, 2017 until his death on June 17, 2018.*[6]

In sum, the probate court found that Anne—who never personally spoke to, met with, or

even laid eyes on Hermann after May 18, 2017—was "willfully absent" under MCL

700.2801(2)(e)(*i*) because she intended to completely physically and emotionally absent

herself from Hermann beginning on that date, she did so, and then she continued to

physically and emotionally absent herself from Hermann for more than a year until his June

17, 2018 death.[7]

---

[4] Sometime after Anne filed for divorce, Hermann moved to Mill Creek, an assisted-living facility.  Later, Hermann moved to Florida, where he died.

[5] On July 17, 2017, the parties stipulated to a modified ex parte order, which preserved Anne's exclusive right to live in the marital home but also granted Hermann or his agent the right to enter the marital home to retrieve his belongings, provided that Anne was given seven days' notice.

[6] Emphasis added.

[7] The relevant portion of Anne's testimony, which was quoted by the probate court in its findings of fact, is as follows:

## II. STANDARD OF REVIEW AND LEGAL BACKGROUND

We review questions of statutory interpretation de novo.[8] And we review a trial court's factual findings for clear error.[9] "A finding is 'clearly erroneous' if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

*Q*. Okay. And [Anne], you had no direct personal contact with Hermann . . . after May 18, 2017, is that correct?

*A*. Correct.

*Q*. Okay. And that includes no physical contact, no telephone contact, or no other direct contact with Hermann?

*A*. No.

*Q*. Is that correct?

*A*. Correct.

*Q*. Thank you. Additionally, after May 18, 2017, the only emotional support you alleged to have offered Hermann was via text message to Hermann's daughter, Carla. Is that correct?

*A*. Correct.

*Q*. Okay. And you ceased sending those messages to Carla on May 31, 2017?

*A*. Correct.

*Q*. Okay. And so *based on your testimony, you had no physical contact with Hermann . . . after May 18, 2017 and offered no emotional support to him after May 31, 2017, correct?*

*A*. *Correct*. [Emphasis added.]

[8] *Dep't of Talent & Economic Dev v Great Oaks Country Club, Inc*, 507 Mich 212, 226; 968 NW2d 336 (2021); see also *Erwin*, 503 Mich at 9.

[9] *Erwin*, 503 Mich at 9, citing *People v Knight*, 473 Mich 324, 338; 701 NW2d 715 (2005); see also MCR 2.613(C).

4

and firm conviction that a mistake has been made."[10]  Therefore, "under the clear-error standard, 'a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction.' "[11]

MCL 700.2801(2)(e)(*i*) provides, in relevant part, that a surviving spouse does not include "[a]n individual who . . . for 1 year or more before the death of the deceased person" "[w]as willfully absent from the decedent spouse." *Erwin* set forth a totality-of-the-circumstances test for assessing whether a person was "willfully absent" under MCL 700.2801(2)(e)(*i*).[12]  In deciding whether there is willful absence, the trial court must determine "whether a spouse's complete absence brought about a practical end to the marriage."[13]  The burden to show the requisite willful absence is on the party challenging a legal spouse's status.[14]  If there are not "indicia of a complete absence in terms of emotional support and contact, [then] courts should conclude that the marriage endured and allow the remaining legal spouse to retain his or her 'surviving spouse' status."[15]  At

---

[10] *In re COH*, 495 Mich 184, 203-204; 848 NW2d 107 (2014) (quotation marks and citation omitted).

[11] *Id*. at 204, quoting *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010).

[12] *Erwin*, 503 Mich at 17.

[13] *Id*.  The complete absence "must be continuous for at least a year leading up to the spouse's death." *Id*. at 23 n 15.  And it must have been "willful;" that is, the spouse must "act with the intent to be away from his or her spouse for a continuous period of one year immediately preceding the death." *Id*. at 11.  Moreover, "the statute does not require the surviving spouse to make a continuous effort to maintain the marital relationship. . . . [T]he inquiry is into whether the surviving spouse did the 'absenting,' not whether the surviving spouse did enough to prevent the absence." *Id*. at 23-24 n 15.

[14] *Id*. at 17.

[15] *Id*.

5

bottom, the touchstone of *Erwin*'s willful-absence test is whether the absenting spouse took "action that [was] akin to a complete repudiation of the marriage."[16]  That is, *Erwin* directs us to ask "whether, given the totality of the circumstances, [Anne] intended to be physically and emotionally absent from [Hermann], resulting in a practical end to their marriage."[17]

### III.  ANALYSIS

The majority opinion's analysis and holding are erroneous.  I conclude that the majority opinion unjustifiably alters the *Erwin* test.  In doing so, the majority opinion creates a per se rule for divorce cases vis-à-vis whether there is willful absence—a per se rule that is just as untethered from the text of MCL 700.2801(2)(e)(*i*) as the per se rule created by the Court of Appeals.

The majority opinion states that "nothing in *Erwin* limits the inquiry to *direct* contacts between spouses;" rather, according to the majority opinion, *Erwin* suggests that indirect contact may be sufficient to establish that there is not willful absence.[18]  Noting that "*Erwin* recognized that the term 'absent' can mean that one is 'exhibiting inattentiveness toward another,' " the majority opinion claims that a spouse is "not 'exhibiting inattentiveness toward another' if they are communicating with a spouse

---

[16] *Id*. at 21.

[17] *Id*. at 25.  I agree with the majority that the inquiry properly focuses on whether the emotional bond and connection between Anne and Hermann were completely absent during the divorce proceedings because it is undisputed that Anne was completely physically absent from Hermann for more than one year before his death.

[18] *Ante* at 12.

6

indirectly, such as through their attorneys."[19] Thus, the probate court "was required to assess the nature and extent of these [legal] communications when determining whether Anne was willfully absent . . . ."[20] The majority opinion concludes that the communications between Anne and Hermann during their pending divorce action, *performed solely by counsel*, automatically bar a finding that Anne was intentionally and completely emotionally absent from Hermann and, consequently, bar a ruling that she was "willfully absent" under MCL 700.2801(2)(e)(*i*).

In setting forth this holding, the majority opinion creates a modified *Erwin* test, a test that the majority opinion refuses to recognize exceeds the boundaries clearly expressed in *Erwin*. Importantly, the probate court's factual findings are owed deference. And they should be rejected by this Court only if, after reviewing the record, we are "left with the *definite and firm* conviction that a mistake has been made"[21] and "the factual determination *clearly preponderates* in the opposite direction."[22] Tellingly, the majority opinion does not attempt to articulate disagreement with the detailed record built by the probate court, which plainly shows: (1) Anne never had an intention to return to the marriage, and (2) she and Hermann effectively lived as a divorced couple for more than a year before his death.[23]

---

[19] *Ante* at 12, citing *Erwin*, 503 Mich at 10.

[20] *Ante* at 12.

[21] *In re COH*, 495 Mich at 203-204 (quotation marks and citation omitted; emphasis added).

[22] *Id*. at 204, quoting *Pierron*, 486 Mich at 85 (quotation marks omitted; emphasis added).

[23] In a footnote, the majority opinion explains that the probate court committed reversible error because it did not apply the appropriate legal standard in this case. *Ante* at 16 n 12. I disagree. As I will explain, the probate court without question faithfully applied *Erwin*.

7

Therefore, to circumvent the record's impact in light of *Erwin*'s test, the majority opinion simply changes that test. But the new test is at odds with a fair and reasonable reading of *Erwin*.

As noted, *Erwin*'s fundamental inquiry is whether the absenting spouse took "action that [was] akin to a complete repudiation of the marriage."[24] In other words, the test asks us to determine "whether, given the totality of the circumstances, [Anne] intended to be physically and emotionally absent from [Hermann], resulting in a practical end to their marriage."[25] For 13 months before Hermann's death, Anne was not in Hermann's physical presence, and she communicated with Hermann only through her legal counsel as she pursued a divorce. That behavior plainly constitutes "complete physical and emotional absence" that "result[ed] in an end to the marriage for practical purposes."[26]

Divorce and willful absence are not mutually exclusive phenomena.[27] A divorcing spouse is not automatically "willfully absent" from the other; there is no necessary

---

But what that court cannot be faulted for is failing to anticipate the majority opinion's modification of the *Erwin* test.

[24] *Erwin*, 503 Mich at 21.

[25] *Id*. at 25.

[26] *Id*. at 27.

[27] An allegation of divorce is premised on a thorough "breakdown" of the marriage relationship such that "the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." MCL 552.6(1). That definition does not say that when undergoing a divorce, the parties cannot emotionally support one another; that is, it plainly does not *require* the severance of all emotional bonds.

connection between those two things.[28]  But it is nonsensical to classify attorney-driven communications, e.g., e-mails that a person receives from the attorney of his or her soon-to-be ex-spouse, as *emotionally supportive, connective, and caring*—and therefore as establishing a lack of willful absence under MCL 700.2801(2)(e)(*i*).  Common sense suggests that such attorney-driven communications would come across as professional, cold, and perhaps even hostile—not emotionally supportive, connective, and caring.

An attorney is, of course, authorized to represent a client in legal proceedings.[29]  But that is a highly dubious foundation on which to rest the holding, as the majority opinion does, that an attorney's professional legal communications during divorce proceedings constitute, or are somehow equivalent to, *spousal* communications—let alone *emotionally supportive, connective, and caring* spousal communications.  An attorney is many things,[30] but a *conduit of spousal emotional intimacy* is not one of them.  Moreover, it is not enough

---

[28] Indeed, as *Erwin* noted, "If two married people decide to live apart but maintain an element of emotional support and contact, courts have no business second-guessing that life decision." *Erwin*, 503 Mich at 16-17.

[29] MCL 600.901 provides, in relevant part, that "[n]o person is authorized to practice law in this state unless he complies with the requirements of the supreme court [under MCL 600.904] with regard thereto."  And MCL 600.916(1) provides, in relevant part:

> A person shall not practice law or engage in the law business, shall not in any manner whatsoever lead others to believe that he or she is authorized to practice law or to engage in the law business, and shall not in any manner whatsoever represent or designate himself or herself as an attorney and counselor, attorney at law, or lawyer, unless the person is regularly licensed and authorized to practice law in this state.

[30] See MRPC 1.0, preamble, ¶ 3.  The preamble to the Michigan Rules of Professional Conduct, while not a binding rule itself, helpfully lists the "various functions" that a lawyer can "perform[]": "advisor," "advocate," "negotiator," "intermediary between clients," and "evaluator."

9

to maintain, as the majority opinion does, that because "absent" can mean "inattentive," it is therefore true that Anne, who communicated with Hermann only through her legal counsel for the 13 months before Hermann's death, was not completely emotionally absent from Hermann during that time. That conclusion confers aggrandized significance to a single line from *Erwin* at the expense of the opinion's overall thrust. Any "attentiveness," to use that word loosely, that Anne might have expressed to Hermann through her attorney before Hermann's death is simply not the emotional support, connection, and care contemplated by a good-faith reading of *Erwin*, or, for that matter, suggested by everyday experience and common sense.

The fundamental inquiry dictated by *Erwin* is whether Anne's intentional absence brought about an end to her marriage *for practical purposes*. There is no other way to describe what Anne did here—absolutely zero personal emotional support for, connection with, or care for Hermann—as anything other than Anne's complete emotional absence from Hermann for more than a year before his death, which rises to the level of willful absence under MCL 700.2801(2)(e)(*i*). Communication through lawyers simply cannot reasonably be said to constitute, or be equivalent to, emotionally supportive, connective, and caring communication between spouses.[31] Thus, it cannot be that communication via

---

[31] Indeed, the preamble to the Michigan Rules of Professional Conduct stresses that, "[a]s intermediary between clients, a lawyer seeks to reconcile their divergent interests as an advisor and, *to a limited extent*, as a spokesperson for each client." *Id*. (emphasis added). That language confirms an obvious point: Communications via counsel are limited in their scope, nature, and purpose; they are not spousal communications, let alone spousal communications that are emotionally supportive, connective, and caring.

legal counsel automatically negates a finding of complete emotional absence, in particular when, as here, there is no court order forbidding emotional involvement.

The Court of Appeals held that, as a matter of law, Anne was not "willfully absent" under MCL 700.2801(2)(e)(*i*) simply because she had filed for divorce.[32] The majority opinion rightly rejects this rule as "unwarranted."[33] After all, not only can such a per se rule not be derived from the text of MCL 700.2801(2)(e)(*i*), but "there is no other statutory provision that would support such a per se rule."[34] Nonetheless, in the same breath, the majority opinion fashions a per se rule of its own.

According to the majority opinion, if there is *any* attorney communication during a pending divorce action, then a finding of complete emotional absence—and therefore willful absence under MCL 700.2801(2)(e)(*i*)—is inappropriate. But because there will *always* be attorney communications during divorce proceedings, under the majority opinion's new test, it is *impossible* for there to be willful absence during divorce proceedings under MCL 700.2801(2)(e)(*i*), no matter how completely absent the absenting spouse otherwise is during that time. In effect, the majority opinion creates a loophole for the worst actors to exploit to their benefit, in defiance of the text of MCL 700.2801(2)(e)(*i*) and *Erwin*'s sensible willful-absence test. The majority opinion, even as it rejects the Court of Appeals per se rule, nonetheless arrives at the very same result that the Court of Appeals

---

[32] See *In re Estate of Von Greiff*, 332 Mich App 251, 256-257; 956 NW2d 524 (2020).

[33] *Ante* at 9.

[34] *Id*.

reached, though by a different path.[35]  A per se rule is not contemplated either by MCL

700.2801(2)(e)(*i*) or by *Erwin*.  The majority opinion creates a test in search of an outcome,

converting *Erwin*'s totality-of-the-circumstances test for willful absence into a single-

factor test: If there are *any* attorney communications during a pending divorce action, an

absenting spouse can *never* be "willfully absent" under MCL 700.2801(2)(e)(*i*).  But EPIC

is clear.  Where a spouse is willfully absent from the decedent spouse for more than a year

before the decedent spouse's death, the absent spouse will lose the right to proceeds from

---

[35] The majority opinion bristles at my characterization of its test as a per se rule, maintaining instead that its true position is that attorney communications merely create a rebuttable presumption against a finding of willful absence.  *Ante* at 15 n 11.  But the manner in which the majority opinion actually applies its test to these facts strongly suggests that it has created a per se rule.  Here, Anne never personally spoke to, met with, or even laid eyes on Hermann for more than 13 months before his death—and yet the majority opinion somehow finds it appropriate to hold that Carla has *not* rebutted the presumption against a finding of willful absence under MCL 700.2801(2)(e)(*i*).  Further, the majority opinion opts to not remand this case to the probate court to give Carla a chance to rebut the presumption.  To be blunt, I cannot imagine any set of facts that more strongly evidences a person's intention to be willfully absent from their spouse, bringing about an end to the marriage for *practical purposes*—except for these facts plus an absence of attorney communications.  But again, attorney communications will *always* happen during a divorce action.  Therefore, if these facts do not defeat the majority opinion's alleged rebuttable-presumption-against-willful-absence test, then no set of facts can or will, and so we can say that the majority has created a per se rule.  Moreover, the majority opinion's decision to affirm the Court of Appeals rather than remand this case to the probate court for it to determine whether the presumption is rebutted clearly demonstrates that the majority intends for its new test to be treated as a per se rule—viz., if there are attorney communications, no matter how poorly the absenting spouse treated the decedent spouse, there is no willful absence under MCL 700.2801(2)(e)(*i*).  If the majority opinion is correct about its test, then the majority should remand this case to the probate court for it to apply the test.

the estate. To the extent this result is inequitable, the proper venue to fashion a remedy is the Legislature, not this Court.[36]

## IV. CONCLUSION

The majority opinion, without adequate justification or explanation, rejects the probate court's detailed, germane, and thoughtful findings of fact on the basis of its preferred result, which rests on a slender reed: that communication solely through one's attorney for more than a year before a spouse's death is sufficient to defeat a finding of complete emotional absence during a pending divorce action. To avoid the result that the factual record compels under a straightforward reading of *Erwin*'s totality-of-the-circumstances test for willful absence, the majority opinion invents a new test and improperly makes the existence of attorney communications dispositive against a finding of complete emotional absence and, therefore, willful absence under MCL 700.2801(2)(e)(*i*). Not only is the majority opinion's new test inconsistent with a fair and reasonable reading of the holding and logic of *Erwin*, but it also generates a per se rule that is unsupported either by the text of MCL 700.2801(2)(e)(*i*) or by *Erwin*. I respectfully dissent.

Brian K. Zahra
David F. Viviano

---

[36] See, e.g., *People v Dunbar*, 499 Mich 60, 71-72; 879 NW2d 229 (2016) (explaining that the authority to rewrite statutes rests with the Legislature, not this Court).

STATE OF MICHIGAN

SUPREME COURT

---

*In re* ESTATE OF HERMANN A.
VON GREIFF.

---

CARLA J. VON GREIFF,

      Plaintiff-Appellant,

v                                                          No. 161535

ANNE JONES-VON GREIFF,

      Defendant-Appellee.

---

VIVIANO, J. (*dissenting*).

I join Justice ZAHRA's dissent in full. As the author of the dissent in *In re Estate of Erwin*, 503 Mich 1; 921 NW2d 308 (2018), I write to make a few additional observations.

As should be evident to even a casual reader of that opinion, I vigorously disagreed with the *Erwin* majority's interpretation of the willful-absence provision of the forfeiture statute, MCL 700.2801(2)(e)(*i*). The lead opinion in *Erwin* held that, under this provision, a spouse is excluded from inheriting as a surviving spouse if there was a "complete physical and emotional absence from the deceased spouse." *Id*. at 21. The concurring justice agreed that emotional absence is required to bar the surviving spouse from inheriting, but she was unwilling to sign onto the portion of the opinion addressing the requirement of physical absence. *Id*. at 28-29 (CLEMENT, J., concurring). Thus, the emotional-absence requirement in *Erwin* had majority support and therefore is precedentially binding.

To summarize, *Erwin* held that for a surviving spouse to forfeit his or her entitlement to collect the intestate share of the decedent's estate under the willful-absence provision, the surviving spouse must have been emotionally absent from the relationship for one year or more before the decedent's death.[1] Applying that holding to the present case, it is clear, for the reasons Justice ZAHRA explains, as well as those given by the dissenting judge in the Court of Appeals and the trial court, that respondent was "willfully absent" from the decedent for more than one year prior to his death.

The effect of the majority's opinion in this case is to overrule *Erwin*'s emotional-absence holding *sub silentio*, at least in the context of pending divorce actions. The majority creates out of whole cloth a presumption that, when a divorce action has been filed—even one filed by the person claiming to be the surviving spouse—a surviving spouse is not willfully absent. Even more strangely, the majority creates a new totality-of-the-circumstances test to determine whether indirect communications between opposing counsel in the divorce action are sufficient to negate a finding of willful absence.[2] Instead

---

[1] Although the *Erwin* dissenters did not agree that a finding of emotional absence was required, we did agree that physical absence was required by the statute. Thus, a clear majority of justices agreed that the provision requires physical absence. Even the concurring justice acknowledged that such a proposition was not controversial: "To be fair, a physical-absence requirement is unlikely to cause mischief—I don't doubt that in a typical case, a finding that a spouse was 'willfully absent' will be supported by, among other things, record evidence of physical absence." *Erwin*, 503 Mich at 29 (CLEMENT, J., concurring).

[2] That our Court continues to make a hash out of this statute is perhaps best demonstrated by the present majority's creation of a new presumption without any support in the text of the statute. The Legislature could have adopted a statute with a bright-line test for forfeiture—like the Uniform Probate Code, which requires a definitive legal act to bar the surviving spouse. See *Erwin*, 503 Mich at 31 n 8 (VIVIANO, J., dissenting). The Legislature could have stipulated that a person could not be barred from inheriting as a surviving spouse while a divorce action was pending. But it did not do so. The separation

2

of applying the *Erwin* analysis and considering whether the surviving spouse was emotionally absent, the majority here harvests some stray remarks from *Erwin* to create a new test in the context of divorce actions. When a spouse files for divorce, there is a presumption that the spouse is not willfully absent. To rebut that presumption, "[t]he challenging party can satisfy their burden by showing that, under the totality of the circumstances, the surviving spouse's communications, or lack thereof, were inconsistent with a recognition of the continued existence of the legal marriage." *Ante* at 16.[3] These

of powers demands that we respect that legislative choice. In a similar vein, the present majority's creation of a second totality-of-the-circumstances test atop the one created by the *Erwin* lead opinion is befuddling. See *Erwin*, 503 Mich at 27 ("Absence in this context presents a factual inquiry based on the totality of the circumstances, and courts should evaluate whether complete physical and emotional absence existed, resulting in an end to the marriage for practical purposes."). What does it mean for a court to decide whether the communications are consistent with the recognition of a marriage *under the totality of the circumstances*? Is this any different than just considering whether the communications are consistent with the recognition of marriage? Moreover, to the extent that the challenger bears the burden of rebutting the presumption, it seems utterly incoherent to instruct the trial court to examine all the circumstances on its own. Successful rebuttal forces the challenging side to produce the evidence sufficient to overcome the presumption. See *Price v Austin*, 509 Mich ___, ___ (April 22, 2022) (Docket No. 161655).

[3] It is puzzling how the majority derives this meaning. The majority looks to *Erwin*'s discussion of the subparagraphs surrounding MCL 700.2801(2)(e)(*i*), which *Erwin* interpreted as "describ[ing] acts on behalf of a surviving spouse that for all intents and purposes are inconsistent with the very existence of a legal marriage" and that represent a "complete repudiation of the marriage." *Erwin*, 503 Mich at 15, 21, discussing MCL 700.2801(2)(e)(*ii*) and (*iii*). *Erwin* concluded that MCL 700.2801(2)(e)(*i*), as a neighboring provision, should be interpreted similarly. For that reason, in part, the *Erwin* lead opinion read MCL 700.2801(2)(e)(*i*) as requiring both physical and emotional absence. In the present case, the majority ignores the results of *Erwin*'s labors, i.e., the actual interpretation, and instead reaches back into the analysis for the observation that these statutory provisions seem to capture acts inconsistent with the existence of a marriage. The majority launches its analysis from that bare observation, leaving behind the ultimate interpretive conclusions that *Erwin* drew from that observation. It is almost as though that observation is being treated as a legislative purpose, which the majority endeavors to further. But of course, it is no such thing (and even if it were, it would not

3

innovations cannot be squared with *Erwin*, which clearly places the focus on whether the departing spouse was emotionally absent.[4]

By boiling this requirement down to the question of whether any contact at all was maintained between the parties—even indirect contact through opposing counsel—while a divorce action was pending, the majority significantly undermines *Erwin*. It can no longer be said that the focus of the inquiry is whether the departing spouse continued to provide emotional support. Instead, it appears that any form of contact—even a profanity-laced tirade sent via text message or e-mail—might be a sufficient "recognition that the legal marriage still exists." *Ante* at 13.

The majority suggests that they are simply carving out a different rule for when a divorce action is filed. But *Erwin* read the language of the statute as requiring emotional absence. When a divorce action is filed, the majority today holds that the emotional-

---

justify departures from the text). Instead, it is just a stray line that formed part of the rationale for *Erwin*'s holding.

[4] See *Erwin*, 503 Mich at 16-17 (holding that a surviving spouse should not be deemed "willfully absent" if he or she "maintain[s] an element of emotional support and contact"); *id*. at 17 ("[W]ithout additional indicia of a complete absence in terms of emotional support and contact, courts should conclude that the marriage endured . . . ."); *id*. at 17 n 9 ("[T]he trial court should ascertain whether that spouse has been *completely* absent from the [decedent spouse], both emotionally and physically."); *id*. at 17 n 10 ("This general rule supports our conclusion that neither physical nor emotional absence in isolation is sufficient for purposes of MCL 700.2801(2)(e)(*i*). Rather, a complete absence is required, both physical *and* emotional."); *id*. at 18 ("One who is physically absent can still be 'attentive' by providing emotional support and communication; conversely, one who is physically absent can also be 'inattentive' by withholding emotional support and communication."); *id*. at 18 n 11 ("[T]here is nothing outlandish about stating that emotional support and communication can be absent from a personal relationship, nor with characterizing one who withholds such support as being emotionally absent from that relationship.").

4

absence component somehow vanishes from the semantic content of the statute. Thus, the majority essentially holds that the same statutory text has different meanings in different factual contexts.

This represents a stupefying departure from normal interpretive principles. The United States Supreme Court has rejected "the dangerous principle that judges can give the same statutory text different meanings in different cases." See *Clark v Martinez*, 543 US 371, 386; 125 S Ct 716; 160 L Ed 2d 734 (2005). Such an approach would "render every statute a chameleon." *Id*. at 382; see also *Carter v Welles-Bowen Realty, Inc*, 736 F3d 722, 730 (CA 6, 2013) (Sutton, J., concurring) ("[A] statute is not a chameleon. Its meaning does not change from case to case. A single law should have one meaning . . . ."). Courts thus have an "obligation to maintain the consistent meaning of words in statutory text" because "the meaning of words in a statute cannot change with the statute's application." *United States v Santos*, 553 US 507, 522-523; 128 S Ct 2020; 170 L Ed 2d 912 (2008) (plurality opinion).

Today, the majority disregards these principles, holding that the statute has one meaning when a divorce complaint has been filed and another meaning when one has not been filed. As new fact patterns arise, the Court will have endless opportunities to divine even more new meanings, making it impossible for a person to know what the law is in advance: when a statute is forced to bear proliferating meanings, it really has no meaning at all.

There is a more principled way to reach the outcome the majority evidently desires. The *Erwin* dissenters interpreted the phrase "willfully absent" as requiring a unilateral decision by the departing spouse:

> A decision made with the consent of the other spouse is not a willful decision—that is, it is not a decision made "following one's own will unreasoningly." Therefore, by using the phrase "*willfully* absent," the statute refers to a spouse who is physically absent as a result of a unilateral decision by that spouse. By contrast, spouses who live apart by mutual choice would be considered surviving spouses under the forfeiture provision because the absent spouse did not make a unilateral decision to be absent. [*Erwin*, 503 Mich at 37-38 (VIVIANO, J., dissenting).]

The majority here nods at the *Erwin* dissent when it states that "[w]hen one spouse unilaterally and without any consideration of the other spouse's desires cuts off all direct or indirect contact with their spouse for over a year, they have taken action 'inconsistent with the very existence of a legal marriage.' " *Ante* at 13.[5] In this case, it is clear that even if Anne was deemed absent, she did not make a unilateral decision to be absent. Arguably, when she initially left the home for a brief period, Anne did not do so voluntarily; rather, she was compelled to do so because Hermann was verbally abusive and ordered her to leave. See *id*. at 37-40 & n 36. Anne only temporarily left the marital home; then, she returned to it and continued to live there by mutual agreement for most of the period that the divorce action was pending. After Hermann's surgery, he lived in an assisted living facility in Michigan and later moved to Florida. Under these circumstances, I would find that Hermann, not Anne, made the unilateral decision to be absent.

As the author of the *Erwin* dissent, I am, of course, partial to it and believe it is faithful to the ordinary meaning of the statute. Instead of undermining *Erwin* and re-writing the statute for this new context, the majority could have placed its cards on the

---

[5] The *Erwin* majority also appears to have borrowed from the *Erwin* dissent when it said that "the inquiry is into whether the surviving spouse did the 'absenting,' not whether the surviving spouse did enough to prevent the absence." *Erwin*, 503 Mich at 23 n 15.

table, overruled *Erwin*,[6] and adopted the *Erwin* dissent. The statute would have maintained a single meaning. Instead, the majority shreds binding precedent by according the same text in the same statute multiple meanings. I believe it would be far better for the law to retain a flawed interpretation than to tack another new, even more flawed interpretation onto it. For these reasons, I dissent.

David F. Viviano

---

[6] I acknowledge that no party asked us to overrule *Erwin*, so I would have supported either supplemental briefing or granting leave on this question to give the parties and any interested amici an opportunity to brief and argue the issue.